ROGERS *et al. vs.* HOPKINS & GLENN *et al.*

[JACKSON, Chief Justice, being disqualified, Judge HAMMOND, of the Atlanta Circuit, presided in his stead in this case.]

1. It is not illegal or against public policy for a guardian to agree with the surety on her bond to invest her ward's money, when received, in state bonds, and deposit them with the surety, to indemnify him against loss as such, there being no other funds in her hands except those to be thus invested; and her attorney, who in good faith aids her in attempting to carry out such an agreement, is not liable if there be a loss of the fund while in his possession, and without fault on his part, before the investment is made. Especially is this true where the evidence shows that the failure to make the investment before the loss of the fund was caused by the fault of the guardian.

2. Where an attorney at law collects money for his client and deposits it in her bank, which is in good standing at the time, in his name as attorney, he having no deposits there, and exercising no control over the fund subsequently to making the deposit, and gives her immediate notice; upon a failure of the bank fourteen days afterward, and a consequent loss of the money, she having failed to make any demand for it in the meantime:

*Held,* that there was no conversion of the money by him, and that he was not liable to make good the loss.

May 1, 1883.

Attorney and Client.   Guardian and Ward.   Principal

and Surety. Debtor and Creditor. Banks. Trusts. Public Policy. Before Judge CLARK. City Court of Atlanta. June Term, 1882.

To the report set out in the decision it is necessary to add only the following letter, in which one of the defendants, J. T. Pendleton, gave notice to Mrs. Rogers as to the status of her case prior to the failure of the bank:

"MARCH 31, 1881.

"MRS. ROGERS—*Dear Madam:*      *      *      * .     *      *

You say in your note of yesterday, that you think you have been overcharged in this matter. It is rather late, it seems to me, to come to that opinion. Besides, you fixed the fee; we didn't do it. You told me in July, 1880, that you could not pay us a fee if the case was lost, and asked me to see Judge Hopkins and find out if he would not take the case on a contingent fee. I disliked very much to speak to Judge Hopkins about it, because I knew he was not in the habit of taking cases like yours on a contingent fee, and consequently put it off from time to time. On August 12th, you wrote me a rather authoritative note, calling my attention to the fact that I had not seen Judge Hopkins, as you had told me to do, and notifying me again that you could not pay us any fee if the case was lost. I replied that we would take the case for a certain fee of $500.00 or a contingent fee of one-fourth of the recovery. All of this occurred after we had been employed, had had a vast amount of trouble in making out the proofs of death, on account of the number of doctors who had seen Mr. Rogers and their disinclination to make a certificate that would suit us, and had brought the suit. You replied, August 5th, that you had concluded to give us the case on the contingent fee. You had considered the matter. You knew the difficulties in the way. You didn't think we could recover, and you made us take the case on a contingent fee. You have a great many times expressed dissatisfaction that we did not settle the case at $2,500.00, and once you stated to me that you wanted to settle at that amount, and if we did not gain the case you would hold us responsible for that amount. Besides all this, we got tired of your business, and requested you to let us off and get other attorneys, stating that we would not charge you for our services up to that time. At the instance of a friend of yours, I agreed to undertake your business again, and had great difficulty in getting Judge Hopkins to do so. Besides, we have done a great deal of work for you outside of this case, and charged you nothing for it, in effect. The money is in the bank. Mr. Perino Brown wants to see you about the children's portion. Your own you can get at any time.

Yours respectfully,      J. T. PENDLETON."

MYNATT & HOWELL; E. N. BROYLES, for plaintiffs in error.

HOPKINS & GLENN; J. T. PENDLETON, *in propriis personis*, for defendants.

HAMMOND, Judge.

Jennie M. Rogers, for herself and as guardian for her three minor children, brought suit against J. T. Pendleton and Hopkins & Glenn, alleging that they had been employed by her as attorneys to bring suit against The Mutual Life Insurance Company of New York, upon a policy of insurance upon the life of her husband, and that they had recovered judgment and had collected the money on said suit, and had failed to pay it over on demand.

The defendants, besides the general issue, filed three pleas.

First, they admitted the recovery for the plaintiff as charged in the declaration, but set up that they were entitled to one-fourth of the same as their fee, under a special contract.

Secondly, they set up the manner and circumstances of the payment, as follows: That J. T. Pendleton received said amount by a draft drawn by the attorneys of the Insurance Company on their solicitor in New York, payable to him as attorney, and forwarded it for collection the same day it was received, to-wit, March 26, 1881, through the Citizens' Bank of Georgia. That, as soon as returns were received from the draft by the bank, on March 31, 1881, he gave notice to the plaintiff of the fact. That the plaintiff failed to apply for the money, and the bank suspended payment on the 13th of April, 1881, whereby the money was lost. That the bank was in good standing when the draft was delivered to it for collection, and that it was forwarded for collection through that bank for the reason that it was the place where plaintiff did her business and kept her deposit account. That none of the defendants kept any deposit account at that bank, but did

keep such accounts at other banks in the city. That defendant, Pendleton, drew out the fee due him and his associates. and the costs, leaving the net amount due the plaintiff on deposit in said bank. That the money was never in defendants' possession, except as thus set out, and was never in any way mixed with their own funds. That the returns from the draft should have been entered to the credit of said Pendleton as attorney, as the draft was drawn to him and indorsed by him in that way, and he never gave the bank any authority to put the amount to his individual credit, and did not know that it had done so until after the bank had suspended payment.

Thirdly, they set up an agreement between plaintiff and defendant, Pendleton, and Perino Brown, president of said Citizens' Bank, by which Brown was to sign the bond of the plaintiff as guardian for her children, as security, and hold the bonds purchased by the children's portion of said money as collateral security against said suretyship, and Pendleton was to hold the children's portion of the money, when recovered, until the plaintiff determined what bonds should be purchased with their portion, when the purchase should be made, and the bonds held by Brown, he giving the plaintiff a receipt showing for what purpose the bonds were held, and that this undertaking on the part of Pendleton was without compensation, and purely for the purpose of enabling the plaintiff to secure Brown against loss as security on her guardian's bond.

The verdict of the jury was for the defendants, and the plaintiff moved for a new trial, and the error complained of in this court is the judgment of the court below overruling this motion and refusing a new trial.

The evidence in the record for the defendants, in support of their pleas, was substantially as follows :

J. T. Pendleton testified that Mrs. Rogers came to him to bring the suit for herself and children on her husband's policy of insurance, and the question came up as to her ability to give bond as guardian for the children, so as to enable her to bring the suit, and the result of it was, with-

out following the evidence through all its details, that Perino Brown was procured to stand on her bond, and that the money, when collected, was to remain in Pendleton's hands until Mrs. Rogers instructed Mr. Brown in what bonds to invest it, and that these bonds were to be left with Mr. Brown as collateral security for his liability on the guardian's bond. He testified further to the collection of the money and depositing it in the Citizens' Bank, and to all the facts and circumstances, substantially as set out in the second plea. He gave Mrs. Rogers notice on the 31st of March, as soon as he got a return from the draft, that the money was in the bank, that Mr. Brown wanted to see her about the children's portion, and that she could get her share at any time. Mrs. Rogers does not make any substantial contradiction of this version of the facts in her testimony. She virtually admits Mr. Pendleton's statement to be the truth, as will evidently appear from reading her whole testimony, including that given on cross-examination. It appears that she was not satisfied with the fee they had charged her, and that she went to G. W. Adair's office to advise with him about the matter, some two or three days before the bank failed, and that he warned her to get her money out of the bank at once, giving her to understand that it was not safe to leave it there. She did not heed his advice; and when the bank failed, the money was still there and was lost. It also appears from G. W. Adair's testimony that the very day before the bank failed she was in his office, and that considerable correspondence took place between her and Mr. Pendleton in reference to the matter, and that she went with Adair to the bank and had a talk with Brown about it, all the time refusing to apply for the money, on account of her dissatisfaction in regard to the fee.

The estimony in regard to the fee charged, was overwhelming and uncontradicted that it was reasonable and fair, and was even less than was usually charged in such cases.

Rogers *et al. vs.* Hopkins & Glenn *et al.*

Such is substantially the case as it presents itself to this court in the record, and the simple question knows, what is the relation of these parties to each other, under the law as applicable to these facts?

The plaintiff demurred to the last plea of the defendants, to-wit, the one setting up the contract between the plaintiff and Pendleton and Brown, by which Pendleton was to hold the children's portion of the money, when collected, until the plaintiff and Brown could arrange about the investment of it in bonds, and which bonds, when secured, were to be placed in Brown's hands, to hold as an indemnity against loss by reason of his going security on plaintiff's bond as guardian for her children. The plaintiff also objected to the introduction of evidence to support this plea, and made a written request for the court to charge the jury to the effect, that a guardian has no right to pledge or put the funds of her ward in the custody or control of her surety on her guardian's bond, and any contract to do so is contrary to law and is void, and the attorney of the guardian who participates in such arrangement will not be protected or saved from personal responsibility for acts or omissions for which he would otherwise be responsible.

The court overruled the demurrer, admitted the evidence, and refused the written request to charge; and these rulings are assigned as error.

1. We do not think that the contract thus pleaded and proved was contrary to public policy, or in any way illegal, and consequently do not think that any blame could in any way attach to Pendleton for attempting to help carry out that scheme, in accordance with his previous undertaking. On the contrary, it would have been bad faith in him towards Brown not to have done so.

The principle of law requested to be given in charge by counsel for plaintiff is a sound one, but is not applicable to the facts of this case. A brief reference to the cases

v 70—30

read in support of the position thus maintained will show a plain distinction between them and the case at bar.

The case of White *vs.* Baugh, 3 Clark & Finnelly, 44, was where a receiver made an agreement with his sureties, in order to get them to go on his bond, that the money should be deposited in bank in the name of the sureties, thereby giving them control over the fund. The court held that this was an illegal contract, and that upon failure of the bank the receiver was liable for the loss.

The case of Salway *vs.* Salway, 2 Rus. and Mylne, 215, announces the same principle in the following words: "A receiver appointed by the court is answerable for the loss of moneys consequent on the failure of a banker with whom they have been deposited for security, if the deposit be made in such a way that the receiver parts with the absolute control over the fund."

In the case of Forsyth *vs.* Woods, 11 Wall., 484, the court held that an arrangement by which an administrator was to bring into a partnership, of which he was a member, the assets of the intestate, and make the administration of the estate a partnership business, and by which they were to share as partners the gains and losses resulting from the administration, was against the policy of the law.

The case at bar is totally different in principle from all these. Here the scheme did not contemplate that the funds of the guardian were to pass into the hands of the surety, so as to give him the use and control of them, or so as to deprive the guardian of her right to exercise a proper control over them, but simply that they were to be invested in bonds—presumably state bonds, as they are the only kind that guardians are allowed to invest in— and that these bonds were to be deposited with the surety, not to be used by him, but simply as a guaranty that they would not be misused by the guardian. Such a plan was laudable, and would, had it not been defeated by a failure of the bank, have afforded double protection to the wards.

The surety could not have used the bonds, because they would not have been his; and had he done so, would have been guilty of larceny after trust; and the guardian could not have wasted or squandered them, because they were guarded by the surety.

It appears from the evidence that as soon as Pendleton got notice that there had been a return from the draft, which had been deposited for collection in the bank of which Brown, the surety, was president, he gave notice immediately to the plaintiff that she could get her share on application, and that Brown wished to see her about the children's share. This was fourteen days before the failure of the bank, and had the plaintiff used proper diligence in carrying out her part of the contract, the investment would doubtless have been made in bonds long before the catastrophe came, and the trust fund would have been safe even in the vaults of the broken bank. But she used no diligence; and because she did not, the money was lost. Therefore, it was not error to permit the defendants to plead and prove these facts, and it would have been error to have given in charge the written request of counsel for plaintiff in error, because it was not applicable to the facts of this case.

2. There are many exceptions to various portions of the charge of the court as delivered, and also to refusals to give in charge several written requests, which are claimed by the counsel for the plaintiff in error to be well taken, because of an alleged violation therein of the legal proposition that an agent who collects or receives money for his principal, and mingles it with his own funds, or makes a deposit of it in his own name in bank, without so designating it at the time of the deposit as to impress upon it the character and quality of a trust fund, is personally liable if there be a loss.

It was earnestly claimed by counsel for plaintiff in error that the application of this general principle of law to the facts of this case, would show a liability to the plaintiff by

the defendant, Pendleton, and consequently by the defendants, Hopkins & Glenn, they being jointly bound with him to see the money properly paid over to the plaintiff. The general charge of the court, which was nearly all excepted to by sections, and the refusals to charge, indicated that the court below did not think that this principle of law was applicable to the facts of this case.

We will first examine the law as cited by counsel for plaintiff in error, and endeavor to ascertain its true meaning, and then apply it to the facts of this case, with a view to determining the question of the liability or non-liability of the defendants to the plaintiff.

The principle laid down in Weeks on Attorneys, §272, is, that if an attorney mix up money belonging to his client with his own, he thereby renders himself the client's debtor. Norris *vs.* Hero *et al.*, 22 La., 605; McAllister *vs.* The Commonwealth, 30 Penn., 536, and Robinson *vs.* Ward, 2 C. & P. 59, were all cases where the agent, attorney or trustee, collected money for his principal and mingled it with his own by depositing it to his own credit, in his own bank, and on his own private account; and the courts hold, in each of those cases, that by so doing he made himself the debtor of his principal, and consequently was liable to him upon a loss of the fund.

In Story on Agency, section 202, it is laid down that if the money of the principal is deposited in his name in the hands of a banker of good credit, and such a deposit is according to the common usage of the place, the agent will not be responsible for any loss arising from the failure of the banker. In the same book, section 218, it is said, that if an agent should improperly deposit the money of his principal in his own name in the hands of a banker, who should afterwards become insolvent, the loss must be ultimately borne by the agent. See also 1 Perry on Trusts, section 443. In 2 Story's Eq. Jur., section 1270, it is laid down that a trustee, who places money in the hands of a

banker, should take care to keep it separate, and not mix it with his own in a common account, etc.

The case of Sargent *vs.* Downey, 49 Wis., 524, lays down the same principle, and it will be seen, by reading the facts of that case, on page 527, that while the agent did make a separate deposit of the fund, yet it was done without the consent of the principal, either express or implied, and without giving him any notice of it, and the court lay stress on these facts in delivering the opinion.

The case of *Ansley & Co. vs. Anderson, Adair & Co.,* 35 *Ga.,* 8, was where the agent had in hand money belonging to his principal, and upon his principal's refusal to receive it, made a deposit of it in bank in his own name, giving the principal notice that it was there subject to his order, and the court held that, upon a subsequent depreciation and loss of the money, the principal could not recover from the agent.

The case of *Phillips, ex'r, vs. Lamar, sh'ff,* 27 *Ga.,* 228, was one in which the court held the sheriff liable where he collected money and deposited it in a bank which failed. The court, however, drew a distinction between that case and the ordinary case where a party selects his own agent, and based their judgment on this distinction, as will be seen by reference to the last two paragraphs of the opinion, on pages 231 and 232.

Let us, then, test this case in the light of the law, as thus revealed to us from the books.

It appears from the evidence that Pendleton collected the money for the plaintiff by receiving a draft payable to his order as attorney, drawn by the attorney of the Insurance Company here, on the New York solicitor, and that he deposited this draft in the Citizens' Bank for collection, indorsing it as attorney, and without giving any instructions as to how the money, when received, was to be credited on the books of the bank. When a return was had from the draft by the bank, he drew a check in his own name covering the fees and costs, leaving the net balance due the

plaintiff on deposit.  He gave her notice immediately, and the date of the letter is fourteen days before the failure of the bank.  In it he tells her that she could get her own part at any time, and that Mr. Brown wished to see her about the children's part.  The bank was in good standing at the time, and up to the day of failure.  The plaintiff herself had a deposit there, and the evidence shows that she drew a check on that deposit the very day before the failure of the bank.  It was not Pendleton's bank, for he kept no deposit there, but did keep one elsewhere, and he placed the money there because it was her bank, and Brown, the president of the bank, was her friend and the surety on her bond.  The plaintiff never once applied to him for the money until after the failure of the bank. Pendleton never once did anything that indicated the least desire or intention on his part to exercise any control over that fund, or appropriate it, or the smallest part of it, to his own use.  It was there, and it was hers, and he so notified her.  She was wholly at fault, and his conduct was above reproach or suspicion; and such being the case, in the language of the able counsel for the defendant in error, " It is not possible, under these facts, that he can be made to pay that money to her."

Such being the view of this case taken by this court, it is unnecessary to consider the numerous other assignments of error in the motion for a new trial.  The verdict is required by the evidence, and the judgment is therefore affirmed.

Judgment affirmed.