### JACKSON *v.* GALLAGHER, administratrix, *et al.*

1. A woman was competent as a witness to testify, that she worked for her brother, and made an agreement with him to hold all of her wages (except enough to pay board) for her child, to accumulate an estate for it, and that he reported to her that he had done so, and had deposited the money in a named bank in his name as agent for the child; the suit being by such child, after the death of the brother, against his administratrix, to recover the money, alleged to have been afterward withdrawn and used by him and his wife.

2. When the father of the child had died, leaving, among other things, certain stock, and it was issued to the uncle in his name as guardian, the certificate so issued was inadmissible in evidence, the stock being in no way involved in the litigation.

3. The facts stated in the first note above, together with evidence that the uncle did in fact deposit money in the bank to the credit of himself as agent of the child, made a prima facie case of a complete gift inter vivos from the mother to the child.

4. Where the uncle afterward drew the money so deposited and redeposited it in his name as agent for his wife, by whom it was later drawn out and used, and the child brought suit for the money alleged to be thus used, it was error to grant a nonsuit.

Argued March 12,—Decided May 16, 1907.

Equitable petition. Before Judge Felton. Bibb superior court. February 6, 1906.

Mary Belle Cochran, a minor, by her next friend, brought suit

21

against Mary A. Gallagher, as administratrix of Edward Gallagher, and also individually, seeking to recover the sum of $2,327.03, claimed to be money of the plaintiff which Gallagher had taken in his lifetime and delivered to Mary A. Gallagher, who received it with knowledge and converted it.   Pending the suit the plaintiff became of age and married one Jackson.   An order was taken striking the next friend and allowing the suit to proceed in her own name.   The evidence showed as follows:   On July 31, 1893, Gallagher had an account in the savings department of the Southern Bank of the State of Georgia, showing a deposit in his name of $1,600.   On that day he closed out his individual account, drawing a check for the amount thereof and redepositing it in the same bank to his credit as agent for Mary Belle Cochran.   He made other deposits in the same way.   On January 16, 1894, he thus deposited $150; on January 7, 1895, $100; on May 14, 1895, $160.   These deposits were made by him in person.   At the time of making them he said nothing as to the person to whom the money belonged.   He wrote no letters in regard to the deposits, but transacted the entire matter personally.   The interest on the account amounted to $317.03, making the total to his credit as agent for Mary Belle Cochran $2,327.03.   On May 13, 1896, he drew against the account his check for $100.   On June 17, 1897, he drew $500.   On May 17, 1898, he drew a check for the balance of $1,727.03.   This check he then deposited in the bank to his credit as agent of Mary A. Gallagher, his wife.   Later he died.   This last deposit, with the interest thereon of $62.82, making a total of $1,789.85, after his death was drawn out by Mary A. Gallagher, by a check which was deposited in another bank, and this deposit in the second bank was afterwards drawn out by her.   The accountant for the original bank testified that the deposit by Gallagher in his name as agent for his wife was a mere method of changing the account from himself as agent for Mary Belle Cochran to himself as agent for his wife.

The mother of the plaintiff testified, that her husband, the father of the plaintiff, died, leaving seven shares of bank stock and several hundred dollars besides "that went to my daughter;" that this was taken charge of by Edward Gallagher, her brother; that she received the certificate of stock from his administratrix after his death; that her husband gave her $1,400 before his death; that she used some of it and loaned out some of it; that she loaned to Ed-

ward Gallagher $1,500; that she married again, but the second marriage being unhappy, she left her second husband and went to live with Gallagher, who was at that time keeping a general merchandise store; that she performed services in the store; that he subsequently built another store, and she carried on business there, conducting a general business for the sale of dry goods, groceries, general merchandise, and millinery; that she had exclusive control of the little store where the millinery was sold, and did all the buying and selling for both stores, generally delivering all the money to him every Saturday night; that the little store was profitable; and that Gallagher died in 1898. Plaintiff offered to prove by her that in 1889, when she (the witness) went to live with her brother, after separating from her husband, she had a contract with her brother by which she was to go in and conduct one store, and do the bookkeeping and purchasing for the other store, the one he ran, and the marking of his goods, and that her wages, whatever they were reasonably worth more than her board, were to be by him each month held for the plaintiff, the daughter of the witness, so as to accumulate an estate for such daughter; that in pursuance of this contract she worked for her brother a little over seven years; that during this time her services were reasonably worth $300 per year over and above her board, and that during that time he advised her that he was depositing this money in the Southern Bank of the State of Georgia for the daughter, and held it as agent for the daughter in pursuance of the agreement. To this testimony the defendant objected, on the ground that the witness was not competent to prove the agreement, because Gallagher, the other party to it, was dead. The court sustained the objection and ruled out the evidence. To this ruling the plaintiff excepted. The plaintiff also offered in evidence the certificate for seven shares of stock in the Citizens Bank of Savannah, referred to in the testimony of the plaintiff's mother, and which was made out in the name of "Edward Gallagher, guardian of Mary Isabella Cochran, a minor." To this evidence the defendant objected, on the ground that the stock was not involved in the suit, and that the certificate was irrelevant. The objection was sustained, and the plaintiff excepted. Upon the close of the evidence the court granted a nonsuit, and the plaintiff excepted.

*Miller & Jones* and *Hardeman & Jones,* for plaintiff.

*W. J. Grace* and *John P. Ross,* for defendant.

LUMPKIN, J.   (After stating the foregoing facts.)

1. The mother of the plaintiff was not an incompetent witness. She was not a party to the case nor pecuniarily interested in the result.   In the transaction between her and the deceased she did not purport to be acting as agent for the plaintiff, but her testimony tended to show that she was in effect making a gift to the daughter inter vivos.   She is not suing to enforce the contract made with her deceased brother, but her testimony would tend to show that the contract was performed.   The fact that her daughter may profit by her testimony will not exclude her.   She falls within none of the classes of persons declared to be incompetent under section 5269 of the Civil Code of 1895; and section 5270 declares that "there shall be no other exceptions allowed under the foregoing paragraphs." *Blount* v. *Beall,* 95 *Ga.* 182 (2) ; *Logan* v. *Logan,* 108 *Ga.* 760 ; *Reed* v. *Baldwin,* 102 *Ga.* 80; *White* v. *Jones,* 105 *Ga.* 29.

2. There was no error in rejecting from evidence the certificate of stock.   The only claim of relevancy seems to be that it was made out in the name of Edward Gallagher (the deceased), guardian of the plaintiff; that Gallagher received this upon the death of the plaintiff's father, and after his death his administratrix delivered it to the plaintiff's mother.   The stock was in no way involved in the litigation, and we fail to see how the mere fact that the certificate was made out in the name of Gallagher as guardian would throw any light on the question of whether he had a contract with the plaintiff's mother, by virtue of which he deposited money in bank in his own name as agent for the plaintiff.

3, 4. Dealing with the case as if the excluded evidence were in, was a prima facie case made out, or did the presiding judge correctly grant a nonsuit?   The plaintiff's case can not be supported on the theory of an express trust.   Such a trust must be created or declared in writing, in this State.   Civil Code (1895), § 3153.   Can it be sustained on the theory of a gift inter vivos by the mother to the child?   According to the testimony of the plaintiff's mother, the plaintiff was about twenty-two years of age at the time of the trial, which occurred in February, 1906.   In 1889, at which time the mother proposed to testify that she went to live with her brother and made the contract with him, the plaintiff must, therefore, have been about five or six years of age.   The mother claims that her brother agreed that whatever her wages were worth, over and above her

board, was to be by him each month held for the plaintiff, so as to accumulate an estate for the latter; that in pursuance of this contract she worked for her brother a little over seven years; that her services were reasonably worth $300 per annum over and above her board; and that during that time he advised her that he was depositing this money in a named bank for the daughter, and held it as agent for the daughter in pursuance of the agreement. Other evidence showed that in fact he withdrew money deposited in his own name, and deposited it in the name of himself as agent for the plaintiff, to the amount of $2,010. Did this make a prima facie case of a valid gift from the mother to the daughter?

"To constitute a valid gift, there must be the intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act accepted by the law in lieu thereof." Civil Code (1895), §3564. "If the donation be of substantial benefit, the law presumes the acceptance, unless the contrary be shown. A parent, guardian or friend may accept for an infant." Id. §3565. "Actual manual delivery is not essential to the validity of a gift. Any act which indicates a renunciation of dominion by the donor, and the transfer of dominion to the donee, is a constructive delivery." Id. §3567. Many and sometimes conflicting decisions have been made on the subject of gifts. Much of the discussion and conflict has arisen in determining whether in the particular cases under consideration the gifts were complete or merely inchoate. This, as well as the underlying principle, is very clearly stated in Nolen v. Harden, 43 Ark. 307. Mr. Justice Eakin said (p. 319) : "All the adjudications concerning the validity or invalidity of gifts inter vivos depend upon a single principle clear enough in itself, but sometimes difficult in its application. Apparent discrepancies have resulted, in most cases, from attempts to make gifts in presenti of choses in action by making formal delivery of the evidences and still retaining some sort of control; which in some cases have been held valid, and in others not—each according to the views which the courts have taken as to the nature of the transaction, whether it be inchoate only and expressive of future intention, or whether it be complete in presenti—and so intended. Where the thing given has been substantial property, the cases are clearer. The principle is this : that if the gift be intended in presenti and be accompanied with such delivery as the nature of the property will admit and the circum-

stances and situation of the parties render reasonably possible, it operates at once, and as between the parties becomes irrevocable. Such delivery may be made to a bailee, as effectually as to the donee in person. Upon the other hand, if there be only an intention to give and no delivery, it will be inchoate and incomplete, however strong the expression of intention may be; and the property does not pass. One is bound by his acts, but without consideration he is not bound to carry out his voluntary intentions, however firmly or earnestly he may express them." In that case the donor was an invalid, incapable of attending to active business. The donee was a young girl, incompetent from age to receive and take care of the gift, which was a bag of coin. The donor delivered it to a trusted friend and neighbor as a gift to the donee. It was held to be complete and valid.

In many of the decided cases the question turned on whether the donor had completely parted with dominion over the property, and the delivery was perfect, or whether he still retained dominion over it. If the person to whom he delivers money is his agent, the possession of such agent is his possession, and the agency may be revoked before it is executed. So if the gift is inchoate, it is revocable by the donor until his power over it is lost. On these principles, which are one in substance, many of the decisions may be explained. Thus, in *Trustees of Howard College* v. *Pace,* 15 *Ga.* 486, it was held that, "Where money is paid by A into the hands of B, to remain at the disposal of C, the right to that money continues in A, until B gives, and C takes credit for it, or B actually pays it to C; up to this period B is the agent of A only, and A may countermand the authority, to make the payment; in the same manner as a person who sends another to pay money may stop him before he arrives at the place where it is to be paid, and require him to deliver it back." That was a case where one person agreed to pay the debt of another. The creditor brought suit against a third party, alleging that the person who had assumed to pay the debt had delivered to such third party money with which to pay it. The defendant, however, was representing the debtor, not the creditor. So where one without consideration intrusted his agent with a sum of money to settle a lawsuit between two others, the principal had the power of revocation until the settlement was complete. *Phillips* v. *Howell,* 60 *Ga.* 411, 414.

Again, where by direction of the owner of a certain fund it was placed in the hands of another to be paid over to a third party, the bailee not having promised to pay the money to such third party, and the latter not having authorized it to be placed in the bailee's hands, the fund was held to be still the money of the bailor. There the person called the bailee was really quoad hoc the agent of the person called the bailor, and held the money for him, not purporting to hold as bailee or agent for the person to whom it was to be paid. The original owner had not lost title or control. *Cox* v. *Reeves,* 78 *Ga.* 543, 544.

Where a person deposited money belonging to him in a bank, with direction that it be paid out to a check which he had given or would give to another, the money was still the money of the depositor, until the bank either paid it or promised to pay it to the third person, or unless it was deposited at the instance or procurement of the other person or under an arrangement with him. *Mayer* v. *Chattahoochee National Bank,* 51 *Ga.* 325 (2). The bank held for the depositor. His direction to pay a check which he had drawn or might draw did not part with his dominion and control over the deposit until the relative situation of the parties had changed in some way. That was not a case of gift. A similar case was that of *Bluthenthal* v. *Silverman,* 113 *Ga.* 102. A nearer case to the one before us was that of *Burke* v. *Steel,* 40 *Ga.* 217, 219. There a person employed by another at a salary of $100 per month directed the employer to pay $25 per month of his salary to a third party for the benefit of the wife and child of such party as a donation or gift. The employer failed to pay the money; and the third party died. It was held that the employee might recover the money from the employer by suit in his own name; and the statement in the declaration that he was suing for the use of the family of the decedent was mere descriptio personæ or surplusage. In *Smith* v. *Peacock,* 114 *Ga.* 691, a like ruling was made. Where an owner of money placed the same in the hands of another with instructions to give designated amounts thereof respectively to a named son and daughter of the owner, and to invest "a part" of the balance of this money in lands, and have the title thereto made to minor children of the person receiving the money, it was held that, as to any portion of such balance not actually so invested, there was no complete gift to the minors, and

the owner had the right to recover the uninvested portion. In that case the owner had not fully parted with his control until there was some change of status. The person receiving the money was acting for the donor. After the payment to the daughter and son, the amount to be invested for the children of the person acting was vaguely described as a part of the balance. Still, as to what was invested for the children, so that he held for them and not for the original owner, it was strongly intimated that the gift was complete.

In *Mims* v. *Ross,* 42 *Ga.* 121, evidence was introduced on both sides as to the completeness of the delivery, and it was submitted to the jury as a question of fact. In *Burt* v. *Andrews,* 112 *Ga.* 465, it was held that a declared intention to give was not sufficient, but there must be a delivery of the article given, or some act done which will be accepted as delivery. During the last sickness of the alleged donor her sister nursed and cared for her for some time. Before her death the donor said to her sister, "There is my china set and washstand set, which you may have for your kindness in waiting on me." No other delivery was made, and the articles remained just as they were at the time the words were spoken. Afterwards the donor died, and it was held that this did not constitute a delivery. In *Anderson* v. *Baker,* 1 *Ga.* 595, bare declarations of a donor to the effect that she had given certain negroes to a donee, that they belonged to the latter, and that the donor had no right to sell them, did not constitute a complete gift, where the donor continued in possession of the property and exercised dominion over it until her death. In *Evans* v. *Lipscomb,* 31 *Ga.* 71, it was said that "The general rule, governing parol gifts or chattels, is, that to constitute a valid gift, there must be an actual delivery of the chattel at the time of the gift, accompanied by words characterizing the act as a gift; and the act done and the words spoken must clearly establish the transfer of dominion over the chattel from the donor to the donee. A delivery of a chattel, preceded and followed by declarations of the party delivering it, that he had given the chattel to the party receiving it, though none of those declarations were precisely contemporaneous with the act of delivery, may constitute a valid gift, provided that the delivery be followed by a continuing possession in the party setting up the gift, of such a character as to indicate an abandonment of

dominion by the former owner, and its acquisition by the possessor;" and as there was a question as to whether the possession of the alleged donee was adverse to that of the donor or consistent with it under a farming agreement, it was held that the character of the possession should be closely scrutinized. The question was left to the jury. It was clearly not meant that the giving and delivering must be exactly coincident in point of time in all cases. Thus if a father should say to his child to-day, "I give you my sorrel horse," and to-morrow should deliver. the horse in consummation of the gift, it would unquestionably be good.

In *Burney* v. *Ball,* 24 *Ga.* 505 (3), it was held, that, to constitute a good and valid gift of personal property, there must be a delivery actual or symbolical, or a writing, but that the acts of the donor and his declarations that he had given the property were admissible in evidence. In the opinion it was said that "A delivery may be inferred from the acts of the donor, which go to show that he has parted with the dominion over the property." This decision was cited approvingly in *Burt* v. *Andrews,* 112 *Ga.* 467, supra. As to the admissibility of such conduct and declarations, see Brashears *v.* Blassingame, 1 Nott & McCord, 223; Grangiac *v.* Arden, 10 Johns. (N. Y.) 292. In *Harrell* v. *Nicholson,* 119 *Ga.* 458, the payee of a note, a short time before his death, sent for the maker and directed him to look in a certain box for the note and to take it and keep it. The note could not be found. After the payee's death a third person found it. It was held that there was no actual delivery and that the gift was not complete. The case of *Hill* v. *Arnold,* 116 *Ga.* 45, cited by counsel for defendant in error, did not involve a gift, but a question of payment. Where a debtor deposited money in a bank to the account of his creditor, this was held not to constitute a payment to the creditor unless the latter consented. Where an attorney at law collected money for his client and deposited it in her bank, which was in good standing at the time, in his name as attorney, he having no deposits there and exercising no control over the fund subsequently to making the deposit, and gave her immediate notice, it was held that upon a failure of the bank fourteen days afterward and a consequent loss of the money, she having failed to make any demand for it in the meantime, this was not a conversion by the attorney, and he was not liable to make the loss good. *Rogers* v. *Hopkins,* 70 *Ga.* 454.

In *Poullian* v. *Poullain,* 79 *Ga.* 12, it was said that "A donatio inter vivos, as distinguished from a donatio mortis causa, does not require actual delivery, and it is sufficient to complete a gift inter vivos that the conduct of the parties should show that the owner-ship of the chattels has been changed." See citations on pages 19 and 20. In that case the owner of certain mill property placed it in the hands of two of his sons, for the purpose of managing it, receiving the income and proceeds thereof, and paying it over to the donor's children and grandchildren. The two sons disbursed the money to all of the children of the donor who were in life and to the children of such as were dead, except the plaintiffs, and the amount going to them was paid into the hands of the donor as guardian. It was held that this showed a consummated gift. In *Harrell* v. *Nicholson,* 119 *Ga.,* supra, Mr. Justice Cobb said: "The rule as to delivery is not so strictly applied to transactions between members of a family living in the same house, the law in such cases accepting as a delivery acts which would not be so regarded if the transaction were between strangers living in different places." In *Ellis* v. *Dasher,* 101 *Ga.* 5, the grandfather of a child of tender years told its father to take the possession of land for it, and his acceptance and possession were treated as a sufficient acceptance and possession by the child so as to authorize an action by the lat-ter, based on prior possession. When the same case was again be-fore this court (102 *Ga.* 830), Mr. Justice Lewis said (p. 833): "Disabilities growing out of minority may often be pleaded to pro-tect the minor's rights, but never to defeat them. Section 3565 of the Civil Code settles the question that a parent, guardian, or friend may accept a gift for an infant."

In *Hargrove* v. *Turner,* 112 *Ga.* 134, it was held, that a father may contract with his minor son to pay the latter wages for his services, and may, in satisfaction of the debt, deliver to him per-sonal property; and that in such a case the possession of the father becomes that of the son, and the property will not be subject to at-tachment for the purchase-money, although found in the possession of the father. In the opinion the following was quoted from Thornton on Gifts, § 175. "As the parent is entitled to the pos-session of his minor child's property, the law does not require him to make a formal delivery to the child, when he must at once repos-sess himself of the property given." Referring to the presumption

of the acceptance of a donation which is of substantial benefit to the donee, unless the contrary be shown, in *Daniel* v. *Frost*, 62 *Ga.* 707, Mr. Justice Bleckley said: "The law takes note of the acquisitive principle of human nature which impels men ordinarily to accept whatever of bounty is offered them." In 20 Cyc. 1198, it is said: "The rule is well settled, however, that delivery need not be made to the donee personally, but may be made to a third person as agent or trustee, for the use of the donee, and under such circumstances as indicate that the donor relinquishes all right to the possession or control of the property, and intends to vest a present title in the donee. Where, however, such third person holds the property as the agent of the donor and not the donee, the gift is revocable at the donor's pleasure, and therefore it is not a valid gift inter vivos." In 14 Am. & Eng. Enc. Law (2d ed.), 1039, it is said: "The delivery of the money to the bank under circumstances showing that it was intended as a gift to the person in whose name or for whose benefit it is deposited is a sufficient delivery, the bank being regarded as the agent of the donee."

Although some decisions are to the contrary, there are numerous other decisions which hold that the mere fact that a person had deposited money in a savings bank to the credit of another, or in his own name as trustee for another, is not conclusive evidence of a gift. Some courts hold that it is prima facie evidence of an intention to make a gift, while some hold that the mere deposit, unless something in addition be shown, will not make even a prima facie case. In most of the cases, however, where there was evidence of such a deposit, coupled with additional facts, such as declarations, the question of intent to make a gift was treated as a question of fact for the jury. It is not necessary to cite and discuss these various decisions. Here it is not a voluntary deposit of one's own money which is involved, but a deposit of money due to another, by direction of that other person, as a gift to her child.

In view of the principles above set forth, we return to the direct question, should a nonsuit have been granted? Let the provisions of the code on this subject be borne in mind (Civil Code, § 5347): "A nonsuit is not granted merely because the court would not allow a verdict for plaintiff to stand. But if the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not

to recover, a nonsuit will be granted." Treating the excluded evidence as in, it tended to show, that the witness (the plaintiff's mother) worked for her brother, who became indebted to her on that account; that she desired to create an estate for the child; that instead of collecting the money from her brother as it fell due and depositing it for or to the credit of the child, she agreed with her brother that he should do so; that he reported that he was depositing the money for the child and held it as her agent; that in fact he did deposit about the amount which the mother testified her services were worth in excess of her board, making the deposit in his name as agent for the child; and that the mother accepted this report and, so far as appears, treated the indebtedness to her as satisfied, and never thereafter made any claim either for payment to her for her services or for the amount of the deposit. There is nothing to show that she ever exercised any control or dominion over it, or claimed the right to do so. The brother made the deposits, not as her agent, or to be disposed of thereafter according to her direction, but as the agent of the child. He was the uncle, and presumably a friend of the latter. Suppose that the mother had collected from him the amount due her and had then returned it to him as a gift to the child, and he had deposited the money in his name as agent for the child, would not this have been a complete gift by the mother to the child inter vivos, accepted for the child by her uncle? And was not this substantially what was done, according to the mother's testimony?

We deem it unnecessary to discuss the doctrine of the appointment and ratification of agents by children. If the mother intended this money as a gift, and if there was a sufficient acceptance by the uncle for the child, and he took the child's money and deposited it in his name as the child's agent, he would be in no position to claim that he could afterwards use the money for himself because the child was of tender years, could not contract, and had not formally appointed him an agent to receive the money for her. The very reason why the law allows an acceptance of a gift on behalf of a child by its parent, guardian, or friend, is because of its youth, and often its inability on account of its tender years, to accept for itself.

If the rejected evidence of the mother had been admitted, a prima facie case would have been made and the grant of a non-

suit was error.  *Eagle & Phenix Mfg. Co.* v. *Belcher,* 89 *Ga.* 218.
The facts in *Gordon* v. *Green,* 10 *Ga.* 534, created a trust in per-
sonalty for the donee, which at that time could be created and
proved by parol.  The facts here are different.  In this case there
is no executory trust, but the evidence indicates, prima facie at
least, an executed delivery.  If the gift to the child was complete,
then the subsequent withdrawal of the fund by the uncle and its
delivery to his wife for her own use was a misappropriation for
which an action would lie, brought by the child through her next
friend          *Judgment reversed.  All the Justices concur.*