## CRAWFORD *et al.*, administrators, *v.* WILSON.

1. A parol obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of the obligor, by decreeing the child entitled as a child to the property of the obligor, undisposed of by will.

2. Such an equitable suit is maintainable by the child in her own name against the administrators of the obligor.

3. Where the contract for adoption is made by the grandmother of the child at the instance of the mother, and is subsequently ratified and renewed between the person adopting the child and the mother, in a suit by the child, of the nature described in the preceding headnotes, against the administrators of the person contracting to adopt, the grandmother and the mother are competent witnesses to prove the contract.

4. The plaintiff is not barred of her equitable cause of action referred to in headnotes one and two, where the suit is instituted within a few

months after the obligor's death, notwithstanding the plaintiff may be thirty years of age at the time of the institution of the suit.

5. The action in the instant case does not fall within the provisions of the Civil Code, § 4015, exempting administrators from suits on debts due by their intestate until after the lapse of twelve months from their qualification as administrators.

6. One of the prayers of the plaintiff is to enjoin the administrators from further proceeding with their application before the court of ordinary for leave to sell the land as that of their intestate. Inasmuch as the plaintiff does not occupy the legal status of heir or creditor, she can not contest in the court of ordinary, with the administrators, their right to administer the estate of their intestate. And as her equitable claim to the property growing out of the defendants' intestate's failure to consummate the plaintiff's adoption as a child extends to the whole estate of the intestate, and as the personal estate is sufficient to pay all debts, equity will preserve the status of the realty by enjoining a sale of it pending the litigation.

7. But as it was not shown that the administrators were guilty of waste or mismanagement, and the circumstances are not such as to indicate that the rights of all the parties would be more effectually and expeditiously protected and enforced by the appointment of a receiver, it was error to appoint a receiver, and, on interlocutory hearing, to divest the administrators of the possession of the property of their intestate, pending the litigation.

APRIL 15, 1913.

Injunction and receiver. Before Judge Jones. Hall superior court. November 25, 1912.

*J. H. Skelton* and *H. H. Dean,* for plaintiffs in error.

*H. H. Perry* and *W. A. Charters,* contra.

EVANS, P. J. The plaintiffs in error as administrators of the estate of Mrs. M. F. Puckett, made application to the ordinary for an order granting them leave to sell the land of their intestate, when Mrs. Daisy Puckett Wilson filed her petition for injunction against such application, on the ground that she was entitled to the whole of the estate by reason of the facts alleged in her petition, and for other relief. The substantial allegations of the petition are as follows: The petitioner is the daughter of James Gaffney and his wife Katie. Shortly after her birth her father abandoned his family and removed to Texas, where he died many years ago. In December, 1882, when she was an infant of about three months of age she was brought to the home of Mrs. M. F. Puckett by her maternal grandmother, and turned over to the care and custody of Mrs. Puckett under an agreement by her mother and grandmother that Mrs. Puckett was to have the sole custody and service and company

of petitioner during her minority, in consideration of Mrs. Puckett's agreement and promise to take petitioner and keep her as her own child and to adopt her as such, with all the rights of a child related to her as such by blood. In pursuance of this contract Mrs. Puckett took petitioner into her home, gave her name to her, and always treated her as a child; and the petitioner knew no other mother or home, and only since the death of Mrs. Puckett did she discover who her natural mother was. At the time petitioner was received into Mrs. Puckett's home, Mrs. Puckett was a widow with one child, a son, who never married and who died before his mother. Petitioner remained with Mrs. Puckett until she was twenty-five years of age, when she married, and during this time she gave to Mrs. Puckett her love and constant attention as a child, assisting her in all household work, and rendering such personal service as only a dutiful child can render a mother. Mrs. Puckett was old and infirm, and required much personal attention; she was peculiar in her temperament, lived largely the life of a recluse, had no near relatives to visit her and very few friends; and petitioner devoted her life to cheering and comforting and waiting upon her foster mother. Up to Mrs. Puckett's death petitioner always considered herself as her child, and was always treated by Mrs. Puckett as such. Mrs. Puckett told petitioner that she was adopted by her as a child, and petitioner believed this, and on the faith of it rendered the service and bestowed upon her the love and affection of a child. After marriage she made frequent visits to her foster mother. Mrs. Puckett was sick on several occasions, and sent for her, and she always responded to her calls on such occasions, and waited on her during her illness. Mrs. Puckett died on July 20, 1912, leaving no children; and her nearest relatives are two brothers and two sisters, all of the half blood. Petitioner is unable to say whether Mrs. Puckett ever took formal steps to adopt her as a child, but she has reason to believe that she did so, and that the papers have been misplaced in the office of the clerk of the superior court, and bases such belief on the oft-repeated declaration of Mrs. Puckett to petitioner and others that she had adopted petitioner as a child. When petitioner was about a year old her mother desired to take her back, and Mrs. Puckett refused to surrender petitioner to her mother. Mrs. Puckett told her mother that she had legally adopted petitioner as a child, and caused her lawyer to

state to her mother that petitioner had been legally adopted, and that her mother had no legal right to the custody of petitioner; and petitioner's mother, believing this statement to be true, relinquished all efforts to recover possession of petitioner. Mrs. Puckett owned at her death considerable personal property and two houses and lots in the city of Gainesville, in one of which petitioner has been residing since Mrs. Puckett's death. Mrs. Puckett left no debts, and her personal property is more than sufficient to pay the expenses of her last illness and burial. The defendants, as administrators, have applied for leave to sell the land of their intestate, and the petitioner can not make any legal objection to the granting of the order for leave to sell, except in a court of equity. The administrators refuse to recognize petitioner as having any interest in the estate of their intestate, but claim that they and their sisters are her sole heirs at law, and entitled to the whole of the estate; and the defendants have taken possession of the personal property, of considerable value. The prayers are, that petitioner be decreed to be entitled to all of the estate of Mrs. Puckett; that the administrators account for what assets may have come into their hands; that they be enjoined from paying any money to any person claiming to be a distributee of the estate, from interfering with her possession of the lot she is occupying, and from procuring an order to sell the realty of the estate; that the letters of administration be abated and a receiver be appointed; and for general relief. The defendants showed cause against the grant of an injunction and the appointment of a receiver, by demurrer and answer. On the interlocutory hearing the court heard evidence, and granted the prayers for injunction and receiver.

1. A child may be adopted on application to the superior court, and after judgment of adoption the relation between the person asking for the adoption and the adopted child shall be, as to their legal rights and liabilities, the relation of parent and child. The adopted child inherits from the adopting parent, but the latter does not inherit from the former. Civil Code, § 3016. There was no evidence on the interlocutory hearing before the judge that Mrs. Puckett ever applied for or obtained a judgment adopting Mrs. Wilson as her child, though several neighbors testified that she declared that she had done so. Whatever right, therefore, the petitioner may have in Mrs. Puckett's estate depends, not upon

42

her status as a legally adopted child, but upon equities growing out of the agreement of Mrs. Puckett to adopt as a child, and the action taken thereunder by the parties thereto and the petitioner. The authorities very generally establish the proposition that a parol obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by both parties during the obligor's life, may be enforced, upon the death of the obligor, by adjudging the child entitled as a child to the property of the obligor who dies without disposing of his property by will. Van Tine *v.* Van Tine (N. J. Ch.), 1 L. R. A. 154 (15 Atl. 249); Van Dyne *v.* Vreeland, 3 Stockton, 370; Sharkey *v.* McDermott, 91 Mo. 648 (4 S. W. 107, 60 Am. R. 270); Haines *v.* Haines, 6 Md. 435; Jaffee *v.* Jacobson, 48 Fed. 21 (14 L. R. A. 352); Healy *v.* Simpson, 113 Mo. 340 (20 S. W. 881); Chehak *v.* Battles, 133 Iowa, 107 (110 N. W. 330, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140); Gates *v.* Gates, 34 App. Div. 608 (54 N. Y. Supp. 454). In these and in other cases various reasons were urged against the specific performance of such an agreement. It was said that an agreement to adopt a child is too indefinite to decree such child rights to property as an heir; but it was replied that where a parent surrenders his child to another who accepts the custody on the promise to adopt the child as his own, it can not be doubted that the parties intended that the act of adoption, when consummated, would carry with it the right of inheritance, and that equity would consider that done which ought to have been done, and decree the child's right to his inheritance as if formal adoption had taken place. Another objection urged against specific performance was that adoption was not recognized at common law; but inasmuch as our statutes justify it, such a contract can not be said to be illegal or contrary to public policy. Then again it was said that if the contract rested in parol, it fell within the statute of frauds; but the full performance of the contract by the parent and by the child in the assumed relation was deemed sufficient to overcome this objection. Another obstacle urged was, that such a contract if broken was remediable in damages; but it was shown that where the consideration of the agreement consists in services, companionship, and a change of domestic relationship, its value can not be adequately compensated in damages. So that it is now well established by authority that

an agreement to adopt a child, so as to constitute the child an heir at law on the death of the person adopting, performed on the part of the child, is enforceable upon the death of the person adopting the child as to property which is undisposed of by will. Though the death of the promisor may prevent a literal enforcement of the contract, yet equity considers that done which ought to have been done, and as one of the consequences, if the act of adoption had been formally consummated, would be that the child would inherit as an heir of the adopter, equity will enforce the contract by decreeing that the child is entitled to the fruits of a legal adoption. 1 Cyc. 936; Parsons on Contracts (9th ed.), 406-7.

2. The point upon which the parties to this case most seriously differ is the right of the plaintiff, who was not a party to the contract upon which she predicates her claim to relief, to bring this suit. The contract was originally made by the plaintiff's grandmother with the assent of her mother, and was afterwards ratified by Mrs. Puckett with the plaintiff's mother. When the contract was made the plaintiff's father had abandoned his family, and under the statute the father lost his parental control over the plaintiff, which survived to the mother. Civil Code, § 3021; *Sav. &c. Ry. Co.* v. *Smith,* 93 *Ga.* 742 (21 S. E. 157). It was within the power of the mother to make the contract, and the question is, whether the right to enforce it inheres exclusively in her.

Before adverting to our own decisions, we wish to call attention to the two general rules on the subject of enforcing a contract by a person for whose benefit it was made, though he was not a party to it,—known respectively as the English and American rules; the statement and rationale of which is so clearly made by Lumpkin, J., in *Sheppard* v. *Bridges,* 137 *Ga.* 615 (74 S. E. 245). The modern English rule has been thus formulated by Cotton, L. J.: "As a general rule, a contract can not be enforced except by a party to the contract; and either of two persons contracting together can sue the other, if the other is guilty of a breach of or does not perform the obligations of that contract. But a third person—a person who is not a party to the contract—can not do so. That rule, however, is subject to this exception: if the contract, although in form it is with A, is intended to secure a benefit to B, so that B is entitled to say he has a beneficial right as cestui que trust under the contract, then B would, in a court of equity, be

allowed to insist upon and enforce the contract." Gandy *v.* Gandy, 30 L. R. Ch. Div. 57. The rule which obtains most generally in America is, that a person not a party to the contract may maintain an action on it if he is a party to the consideration, or the contract was entered into for his benefit; and if the person for whose benefit a contract is made has either a legal or equitable interest in the performance of the contract, he need not necessarily be privy to the consideration. 9 Cyc. 380. An exception to the general rule that a stranger to a contract, deriving a benefit from it, can not sue upon it, arises when the contract has been so far performed as to change the condition in life of the stranger and to raise in him reasonable expectations grounded on the conduct of the contractor. Waterman on Specific Performance, § 54. An illustration of the application of this principle is given by this text-writer; as, when a gentleman of wealth enters into an agreement with a poor man that the former will take the child of the latter, bring him up in affluence, and leave him certain property, and there is part performance, the child is entitled to have the agreement carried out, "his right," says the author, "being derived, not from the contract itself, but from what has been done under it, and the wrong he will otherwise sustain." Where one takes an infant into his home upon a promise to adopt such as his own child, and the child performs all the duties growing out of the substituted relationship of parent and child, rendering years of service, companionship, and obedience to the foster parent, upon the faith that such foster parent stands in loco parentis, and that upon his death the child will sustain the legal relationship to his estate of a natural child, there is equitable reason that the child may appeal to a court of equity to consummate, so far as it may be possible, the foster parent's omission of duty in the matter of formal adoption..

In the case at bar Mrs. Wilson was received into the home of Mrs. Puckett as a three-months-old infant, upon the promise by Mrs. Puckett to her mother to adopt her as a child. For twenty-five years Mrs. Puckett accepted her service upon the understanding that the agreement with petitioner's mother was the basis of the relationship existing between them. Petitioner grew up as a dutiful daughter of her foster mother; and the latter, most probably with affection for Mrs. Wilson, and with a desire to bind that affection, never disclosed who her mother was, and left it to be

discovered by petitioner after her death. Under the agreement between her mother and Mrs. Puckett, petitioner was to receive something beyond the literal terms of the contract. The contractual obligation was to adopt petitioner as a child. If formal adoption had been consummated, then the law would have vested her with a right of inheritance from Mrs. Puckett, and it is this right of inheritance which petitioner is seeking to enforce in this action. Therefore, when we consider that this action is not to recover for services under her mother's contract, but is grounded on what was done under it, the changed domestic relation which was contemplated to be accomplished by the contract, and the personal rights which would accrue to petitioner from the act of adoption by operation of law, we see no reason why it can not be maintained by petitioner in her own name.

In reaching this conclusion we do not think that we run counter to any decision of this court or statute of this State. The statute declares that "as a general rule" an action on a contract must be brought by a party to it. Civil Code, § 5516. The statutory statement that as a general rule only a party to a contract can enforce it carries with it the implication that there are exceptions to the general rule. The various adjudications of this court on the subject were critically analyzed in *Sheppard* v. *Bridges,* supra; and in that case it was held that if a beneficiary of a contract, though not a party to it, stand in a quasi trust relation to its subject-matter, he may enforce his rights under it in a court of equity with proper parties. The present case is to be differentiated from the cases of *Gunter* v. *Mooney, 72 Ga. 205,* and *Cooper* v. *Claxton, 122 Ga. 596 (50 S. E. 399),* which concerned suits at law by a child to recover, as for breach of contract made by the parent with a stranger, the stipulated compensation for the child's services. In the present case the subject-matter of the contract was that the petitioner was to be adopted as a child of the promisor, which contract, if it had been consummated, would have given petitioner a beneficial right of inheritance by operation of law, and beyond the express terms of the contract. The suit is in equity; and the changed domestic relation between the foster parent and foster child, together with the right of inheritance under the law, as a result of the changed parental relation, if formal adoption had been consummated under the contract, serves to bring this case within the exception recognized in *Sheppard* v. *Bridges,* supra. *Robson* v. *Harwell, 6 Ga. 589.*

3. In the discussion of the foregoing legal principle we have been considering the case on demurrer, which, of course, admitted the truth of the allegations of the petition. The petitioner submitted evidence to support her allegations, to the admissibility of some of which objection was made. The petitioner's grandmother and mother were permitted to testify to the contract claimed to have been made with them by Mrs. Puckett, over objection that if they were acting as agents for the petitioner they would be disqualified under the Civil Code, § 5858. In the transaction between Mrs. Puckett and the grandmother and mother of the petitioner, the latter did not purport to be acting as agent of the petitioner; neither are they suing to enforce the contract with Mrs. Puckett. The fact that the petitioner may profit by their testimony will not exclude them. They do not fall within any of the classes of persons declared to be incompetent by the Civil Code, § 5858; and the next section declares that there shall be no other exceptions. *Jackson v. Gallagher,* 128 *Ga.* 321 (57 S. E. 750).

4. One ground of the demurrer is that if petitioner had a cause of action she is barred by her laches in asserting it. The defendants' intestate, according to the allegations of the petition, never repudiated her contract to adopt petitioner; on the contrary, it is alleged that she repeatedly admitted that she had taken petitioner for adoption as her child. It is alleged further that up to her death Mrs. Puckett always treated the petitioner as her child. Not only this, but Mrs. Puckett never disclosed to petitioner the identity of her mother, and it was not until after Mrs. Puckett had died that petitioner found her mother. Adult persons may be adopted in like manner as minors.' Civil Code, § 3018. In view of these circumstances, and the fact that the petition was brought a few months after Mrs. Puckett's death, we do not think the petitioner's action is stale.

5. The action was brought within twelve months from the appointment of the defendants as administrators of Mrs. Puckett; and inasmuch as the statute exempts administrators from suit for twelve months after their appointment, it is contended that the action is premature. The statute prohibits suits against administrators within twelve months from their qualification, on debts due by the decedent. Civil Code, § 4014. This section has no application to a case like this. The defendants were applying for an order

to sell the realty of the intestate. The petitioner had no legal status as a child, and could not contest with them her right to the estate in the court of ordinary. It was necessary for her to come into equity to establish her right to the property, and the efforts of the defendants to sell property which in equity belonged to her would defeat her right to the property if she were required to wait twelve months before bringing suit.

6. The petitioner's right to the remedy of injunction and receiver is also denied. As we have just said, she had no legal status as heir; and as only heirs and creditors may contest with an administrator respecting the administration of the property of his intestate, she was forced into equity to establish her equitable claim to the property which defendants were proceeding to administer as the property of their intestate. Having an equitable interest in the property of the defendants' intestate, and presenting a meritorious case for its recovery, she had the right to preserve its status until final decree, and injunction is an appropriate remedy for that purpose.

7. But we do not think that a receiver should have been appointed. There is no charge of waste or mismanagement by the administrators. It is not alleged that they perpetrated any fraud on the ordinary in procuring letters of administration. If the petitioner should fail to prevail on the final trial, an administration of the estate would be necessary; and although it is alleged that the intestate left no debts, and that her personal estate is ample to pay the expenses of the last illness and burial, these creditors would be entitled to have an administration. The equitable claim of the petitioner is to the estate after all debts are discharged. The fact that the personal estate is ample to discharge the expenses of the intestate's last illness does not compel an abatement of the administration. Courts of equity are slow and cautious about appointing receivers to take charge of the assets of an estate in the hands of a duly appointed administrator, and will not interfere with his possession of property coming into his hands as the property of the intestate, except in cases where all the circumstances indicate that the rights of all parties would thereby be more effectually and expeditiously protected and enforced. The case presented in *Hill* v. *Arnold*, 79 *Ga.* 367 (4 S. E. 751), is quite dissimilar to the case at bar. There an administrator was

seeking to administer, as belonging to his intestate, property to which the intestate had no title; whereas in the case at bar the petitioner's title is derivative from the defendants' intestate, and is dependent upon her establishing such equitable relation to it as to constitute her the sole heir at law of the intestate. Accordingly,. that portion of the interlocutory judgment pertaining to the appointment of a receiver is erroneous, and in affirming the judgment we direct its modification to that extent.

*Judgment affirmed, with direction. All the Justices concur.*