## 26242. DANIEL v. O'KELLEY.

ARGUED DECEMBER 15, 1970—DECIDED JANUARY 21, 1971— REHEARING DENIED FEBRUARY 15, 1971.

*A. Frank Grimsley, Guy V. Roberts, Jr.,* for appellant.

*Hatcher, Stubbs, Land, Hollis & Rothschild, Albert W. Stubbs,* for appellee.

FELTON, Justice. 1. The complaint in this case stated a claim upon which relief might be granted and the facts shown by the record would have authorized a finding for the plaintiff by a jury trying the case under the evidence presented by both sides which involved issues of fact arising from the facts involving the credibility of witnesses and circumstances shown. Such issues may not be resolved on a motion for a summary judgment. For authority for the claim of the plaintiff in this case, see *Crawford v. Wilson,* 139 Ga. 654 (1) (78 SE 30, 44 LRA (NS) 773): "A parol obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of the obligor, by

decreeing the child entitled as a child to the property of the obligor, undisposed of by will." We conclude that under the record as hereinafter shown the court erred in sustaining the appellee's motion for a summary judgment.

2. Appellee propounded seventeen interrogatories to the plaintiff and her attorneys. Prior to the time any answers to the questions had been filed or served on appellee he amended and limited his questions as follows: that none of the interrogatories should be construed as to call for any answers by the plaintiff or her attorneys as to any transaction or communications with the late Mrs. Zida A. Lokey, deceased, or as to any matters which are prohibited by *Code* § 38-1603. Some of the questions were not at first answered by the plaintiff for reasons given, but the court on motion of appellee required all 17 of the questions to be answered, as to which requirement the plaintiffs made no objection and make no point on such ruling in this court by their enumerated errors. In the document limiting the answers the defendant provided that he insisted upon the protection and benefit which the provisions of said *Code* § 38-1603 afforded. Can the appellee exempt himself from the consequences of the answers to his interrogatories which showed that the alleged contract by Mrs. Zida A. Lokey to adopt Sandra Lokey Daniel was made in the presence of Mrs. L. P. (Inez) Banks, who is an heir-at-law of Mrs. Zida A. Lokey? See *Code* § 38-1603 and § 38-1603 (6). Assuming for the sake of argument that at this point the appellee was not bound by the answers to the interrogatories to the extent that on a trial the appellee would be considered as having introduced the testimony of Mrs. Banks, *still, when the appellee based his motion for a summary judgment on all of the answers to the interrogatories, including the answer that Mrs. Banks was present when the alleged contract to adopt Sandra Lokey Daniel was entered into by Mrs. Lokey and Mrs. Daniel's mother, Jean A. Register, according to admissions allegedly made in the presence of the plaintiff and her husband, in this summary judgment proceeding,* he lost whatever protection he might have had from his effort to shield himself from the consequences of such answer to the interrogatories. Moreover, the appellee also based his motion for a summary judgment on, among other affidavits, an affidavit by Mrs. Banks to the effect that she

was present at the time and place at which plaintiff claimed the contract to adopt was made and that *Mrs. Lokey did not enter into such a contract.* The consequence of these two actions by appellee destroyed whatever protection he might have had from his effort to claim exemption from the consequences of his act and at the same time to claim the benefit of the answers and the affidavit of Mrs. Banks. The importance of this question is that if the appellee had the protection sought under *Code* § 38-1603, the affidavit of the plaintiff as to transactions and admissions of Mrs. Lokey, deceased, would be inadmissible by reason of the incompetency of Mrs. Daniel, a surviving party, to testify as to the alleged admission of Mrs. Lokey. It is contended by appellee that Mrs. Banks' testimony that there was no contract to adopt entered into by Mrs. Lokey was not testimony as to a communication or transaction between Mrs. Lokey and Mrs. Jean Register. With this contention we do not agree. The testimony that the deceased Mrs. Lokey positively did not make the contract to adopt is as much with reference to a communication or transaction between the deceased and the plaintiff as testimony that she did so contract. Therefore, *Code* § 38-1603 (6) applies. It is as follows: "In all cases where the personal representative of the deceased or insane party has introduced a witness interested in the event of a suit, who has testified as to transactions or communications on the part of the surviving agent or party with a deceased or insane party or agent, the surviving party or his agent may be examined in reference to such facts testified to by said witness." The case of *Tidwell v. Garrick,* 149 Ga. 290 (99 SE 872) is not authority to the contrary for the reason that in that case the witness merely testified that she did *not hear* the deceased enter into a contract to adopt. In this case the witness categorically testified that there was no contract of adoption made. The plaintiff and Mr. Daniel, next friend, and a nominal party only, were thus competent to testify as to the admissions of Mrs. Lokey. Mr. Daniel was not pecuniarily interested in the estate. Mrs. Daniel, plaintiff, was competent to so testify for the reason that Mrs. Banks, the sole heir of Mrs. Lokey, deposed by affidavit in support of summary judgment as to a transaction or communication between the deceased Mrs. Lokey and Mrs. Jean Register, natural mother of the plaintiff.

3. The answers to the interrogatories by plaintiff showed an abandonment of the plaintiff by her father. The answers showed that the father abandoned the plaintiff and her mother when the plaintiff was about six months old and that Mrs. Lokey had to bring them to her home to care for them and that the plaintiff had not since said alleged abandonment heard from or seen her father. This evidence alone is sufficient to prove abandonment at least prima facie under the test laid down in *Glendenning v. McComas,* 188 Ga. 345 (3 SE2d 562), as being any conduct by the father which demonstrates a settled purpose to forego all parental duties and relinquish all parental claims to the child. The fact that it was unnecessary for the father to furnish the daughter with the material requirements of life is not sufficient to rebut the father's intention to abandon. Furnishing necessaries is not a substantial factor in the face of the fact of foregoing the human and spiritual duty of the father to furnish love and affection to the child in the absence of evidence of some good reason why he could not. Moreover, the mother of plaintiff gave an affidavit in support of the motion for a summary judgment in which was omitted any reference to the fact that the husband did not abandon her and the plaintiff. It was therefore unnecessary to show that the father consented to the adoption involved. Genuine issues of fact remain as to whether the alleged agreement to adopt was made and that there was a failure to do so and whether all the conditions were met by the child and its mother and whether Mrs. Lokey, in consideration of her agreement to adopt, took the plaintiff and reared and nurtured her as her own child until death.

The answers to the interrogatories, filed by the plaintiff and the affidavits filed by the plaintiff and her husband, and the affidavits filed by the defendant show that there are genuine issues of fact for a jury. The answers to the interrogatories upon which the defendant partially based his motion for a summary judgment, and the affidavits filed by the plaintiff, as aforesaid, would authorize a finding that Mrs. Lokey and the plaintiff's mother, by the admissions made to the plaintiff and her husband, entered into the contract alleged under which Mrs. Lokey was to adopt the plaintiff and rear and care for her as her own; that all of the terms of the contract were performed except that Mrs. Lokey did not legally

adopt the plaintiff but thought that she had legally adopted her by a proceeding by which the plaintiff's name was changed to Sandra Lokey; that Mrs. Lokey signed the marriage license as plaintiff's "mother or guardian," intending to sign as her mother since she was not her guardian; that Mrs. Lokey had the statement put in the local newspaper giving the account of the wedding between the plaintiff and her husband that the plaintiff was the adopted daughter of Mrs. Lokey. The statements made in the affidavits presented by the defendant in support of the motion for a summary judgment did not show that there was no genuine issue of fact in the case. These affidavits show:

"A." The affidavit by Mrs. L. P. (Inez) Banks, sole heir of Mrs. Zida A. Lokey: That Mrs. Banks categorically denied that a contract of adoption was made at the time and place stated by plaintiff, between Mrs. Lokey and plaintiff's mother.

"B." The affidavit by Mrs. Neville House: She denies the plaintiff's contentions and says that the only thing Mrs. Lokey told her was that she would adopt Sandra but she was afraid Sandra's mother would not sign the adoption papers.

"C." The affidavit by Mrs. Pearl Angel: Shows that on one occasion Mrs. Lokey referred to Sandra as her adopted daughter.

"D." The affidavit by W. B. Taylor, Ordinary of Randolph County: Shows that he did not know anything about the adoption.

"E." The affidavit by J. B. Wilson: Shows the same as the one next above.

"F." The affidavit by Miss Louise Sharley: Shows the same as the two next above.

"G." The affidavit by Mrs. Jimmy King: Shows that Sandra never wanted for anything; Mrs. Lokey took care of her in every way.

"H." The affidavit by Mrs. Eva B. Williamson: Shows she knew nothing about the adoption.

"I." The affidavit by Mrs. Jean A. Register, mother of plaintiff: Shows that she categorically denied that there was any contract of adoption.

"J." The affidavit by Attorney Dell Bowen: Shows that he handled the transaction in which plaintiff's name was changed and that Mrs. Lokey said that she did not intend to adopt Sandra.

This affidavit, even if admissible, does not deny an agreement to adopt the plaintiff. The plaintiff's answers to the tenth interrogatory are consistent with the plaintiff's claim that her claim is based on a valid agreement to adopt and the breach thereof rather than that her claim is based on a "contract of virtual adoption." The plaintiff's answers to the 10th interrogatory are as follows:

"(b) There were no parties to a *contract of adoption* . . .

"(e) There was a virtual adoption but no *contract* of virtual adoption.

"(f) There was no contract of *virtual* adoption."

4. The claim of the plaintiff was not rendered moot by the sale by the administrator of the assets of the estate. Whatever claim the plaintiff has under her complaint attaches to the proceeds of the sale. The only moot question is whether the plaintiff is entitled to Mrs. Lokey's estate *in kind.*

5. We agree with the appellee that the plaintiff's claim must be shown by proof, clear, strong and satisfactory, must be definite and certain and beyond a reasonable doubt but that is a matter for a jury to determine.

The court erred in sustaining the appellee's motion for a summary judgment.

*Judgment reversed. All the Justices concur.*