Mrs. B–B, Plaintiff,

v.

Joseph **CALIFANO**, Secretary of the Department of Health, Education, and Welfare, Defendant.

Civ. A. No. 78–209–MAC.

United States District Court, M. D. Georgia, Macon Division.

Sept. 20, 1979.

Denmark Groover, Jr., Groover & Childs, Macon, Ga., for plaintiff.

D. L. Rampey, Jr., U. S. Atty., S. Elizabeth Conlin, Asst. U. S. Atty., Middle District of Georgia, Macon, Ga., for defendant.

OWENS, District Judge:

Plaintiff brought this action pursuant to § 205(g) of the Social Security Act, as amended and codified under 42 U.S.C.A. § 405(g), to obtain judicial review of a final decision of the Secretary of Health, Education, and Welfare denying her daughter's claim for surviving child's insurance benefits.

On August 29, 1977, plaintiff filed an application for surviving child's insurance benefits on behalf of her son and her daughter (hereinafter referred to as A). The application for her daughter was denied initially, and on reconsideration by the Social Security Administration. Plaintiff requested a hearing which was held on August 18, 1978, at which plaintiff and her attorney appeared. The administrative law judge (ALJ) considered the fact *de novo*, and on September 1, 1978, held that A was not entitled to children's insurance benefits. The Appeals Council affirmed the administrative law judge's decision on October 16, 1978; it was, however, not to be the final decision of the Secretary. On October 26, 1978, plaintiff came into this court seeking judicial review. Subsequent to her filing in the court, the Secretary obtained an extension of sixty days from December 30 in

which to respond; and on January 11, 1979, on motion by the Secretary the matter was remanded to the Secretary for further action. On February 6, 1979, the Appeals Council advised plaintiff's counsel that following the remand to the Secretary, the Appeals Council had remanded the same to the ALJ because: "It [the Appeals Council] was unable to transcribe the cassette for the hearing held on August 18, 1978." The Appeals Council directed that the ALJ either hold a *de novo* hearing or prepare a transcript of the hearing. On February 23, 1979, the ALJ forwarded a transcript to the Appeals Council; whereupon such claim was denied by the Appeals Council on April 27, 1979, becoming the final decision of the Secretary. The case is now before the court for judicial review.

The only issue before the court is whether the conclusions of law presented in the Secretary's decision are supported by substantial evidence. The facts recorded in this case set forth an issue which, by this court's research, has not been presented to any court in such a fashion—whether an illegitimate child, born during a valid and existing marital relationship, is contemplated as one who is covered under the Social Security Act. This court, without delving into the inequities produced by exclusion from coverage, finds that the administrative law judge correctly applied the existing law and that his decision denying the plaintiff's daughter benefits under the Act is supported by substantial evidence. The facts reveal that plaintiff and her husband, the deceased wage earner were married in 1969. Her husband was serving in the Armed Forces and was sent to Korea for a period of time from August 16, 1969, to October 6, 1970. Plaintiff remained stateside and the record reveals her husband did not return home on leave until his tour of duty ended on October 6, 1970. Upon his return he found that his wife was 8-months pregnant with, by her own admission, another man's child. The couple however resumed living together and remained married. Plaintiff at A's birth, did not put the wage earner's name on the birth certificate, but instead left it blank; a fact wage earner did not

know about until approximately two years before his death. Plaintiff testified that from A's birth until the wage earner's death, almost seven years later, the wage earner loved A as if she were his natural child. Plaintiff claimed that the wage earner wanted his name put on the birth certificate and that he said he would do anything to make the child legally his. The record indicates however that no formal adoption proceedings were ever begun, although plaintiff stated there was a verbal agreement to that effect. There was also entered into evidence, in support of plaintiff's claim of equitable adoption, copies of divorce papers wherein the wage earner acknowledged A as his child and agreed to support her. The divorce was filed in court but was not consumated due to the reconciliation of the parties.

In order to receive child's disability benefits, an applicant must qualify as a "child" as defined in 42 U.S.C.A. § 416(e). It provides in part:

> (e) The term "child" means (1) the child or legally adopted child of an individual, (2) a stepchild . . . . .

Plaintiff in seeking coverage for her daughter under the Act couched her argument on the initial ground that A was the legally adopted child or "deemed" child of the wage earner. In the alternative she claimed A was a stepchild of the deceased wage earner.

■ As it regards the decision of the ALJ, the record ably demonstrates the careful scrutiny accorded the final outcome in this case. The ALJ initially determined that A was not the natural child of the wage earner. This determination was based upon:

> (1) the documented evidence that the wage earner had no access to his wife for a continuous period of 14 months during which time the child was conceived;

> (2) the statement of the plaintiff that the wage earner was not the natural father; and

> (3) the birth certificate itself.

While Georgia law under 74 Ga.Code Ann. § 101 presumes a child born within wedlock to be legitimate, such presumption may be rebutted. The ALJ was therefore supported in his determination that the evidence had been rebutted and A was not the natural child of the wage earner.

 The ALJ's conclusion that A had not been equitably adopted by the wage earner was likewise supported by substantial evidence. The Social Security Act, § 216(h)(2)(A) directs the administrative judge to the state intestate personal property laws for entitlement purposes.[1] The ALJ correctly applied Georgia law on equitable adoption,[2] *see Crawford v. Wilson*, 139 Ga. 654, 78 S.E. 30 (1913), to the facts in the instant case. He found that the child was virtually adopted, but determined that the second essential element—an agreement, either verbal or written, that the child will be adopted by the equitable parent—was not substantiated by the evidence on record. Incorporated into his conclusion were such facts as: a period of two years when the wage earner knew about A not being his natural child, but failed during that period to take any formal steps to begin adoption proceedings; the absence of any evidence, other than that given by plaintiff, that the wage earner was willing to do whatever was necessary to make A his daughter; the fact that the wage earner realized further legal action was necessary to make A his daughter but to avoid embarrassment he took *no such action.* While existence of a verbal agreement was testified to by the plaintiff, the ALJ was entitled under the regulations to take into account any interest a party might have in the outcome. 20 C.F.R. § 404.708. The ALJ's conclusion was therefore supported by substantial evidence.

 The final arguably applicable provision presents the court with the novel question of whether the Social Security Act under its stepchild provision covers this child. Neither the Act itself nor the regulations prescribed by Congress define the term concisely. The ALJ interpreted the Act to contemplate a situation where the stepfather contracted a valid marriage with the natural mother *following* the birth of the stepchild. This was based upon an interpretation of 20 C.F.R. § 404.1109(b) which provides that a child:

> Is the stepchild of the individual upon whose wages and self-employment is based by reason of a valid marriage of his parent . . . with such individual
> . . . .

The court has reviewed the evidence of record and finds that the implication was well founded. The language defining stepchild nowhere contemplates in a forthright manner a situation such as this. The court is well aware that the purpose of the children's benefits is to provide at least some measure of income and security to those who have lost a wage earner on whom they depended. *Ziskin v. Weinberger*, 379 F.Supp. 124 (D.C.Ohio 1973). In keeping with that purpose there may exist, from time to time, individuals who depend on insured individuals without enjoying a familial relationship. It, however, is not the province of this court to include such an individual without the guidance of Congress. Without such guidance the court must give language its normal meaning. *Stephens v. Federal Security Administration*, 121 F.Supp. 120 (E.D.Ill.1949). In interpreting the term "step-child", the ALJ

---

1. Section 216(h)(2)(A) of the Act, 42 U.S.C.A. § 416(h)(2)(A), provides that:

 "In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domi-

ciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia."

2. Equitable adoption occurs when: (1) there is an agreement, either verbally or in writing, that the child will be adopted by the equitable parent; and (a) there is a virtual adoption; *i. e.*, the equitable parent has custody of the child to the exclusion of the natural parent.

was well apprised of the existing definitions available to him.[3] In each instance "step-child" was given a similar construction; *i. e.*, the child of one of the spouses by a former marriage. The court therefore finds that the Administrative Law Judge applied a correct legal standard, amply supported by substantial evidence.

Accordingly, the decision of the Secretary is hereby AFFIRMED.

SO ORDERED, this the 20th day of September, 1979.

---

**3.** (a) Black's Law Dictionary, 1584 (4th Ed. Rev. 1968) defines "step-child" as "the child of one of the spouses by a *former* marriage."

(b) Bovier's Law Dictionary defines "stepdaughter" as "the daughter of one's wife by a former husband, or of one's husband by a *former* wife."

(c) The American College Dictionary—Random House—defines "stepdaughter" as "a daughter of one's husband or wife by a *former* marriage." In addition "step-" is defined as "a prefix indicating connection between members of a family by the *remarriage* of a parent, and not by blood.

(d) The Oxford English Dictionary likewise concurs in its definition. A "stepdaughter" is "[a] daughter, by a *former* marriage, of one's husband or wife."