## EZELL v. MOBLEY.

HINES, J. 1. The special demurrer to the caveat does not raise the question that the caveatrix should be required to allege specifically whether she claimed as an heir at law of the testatrix by legal adoption or by virtual adoption; but the special demurrer raises the question that one who claims as heir at law of the testatrix by virtual adoption can not caveat the will of the testatrix. By her caveat the caveatrix bases her right to contest the probate of the will of testatrix on the ground that she had been virtually adopted by testatrix; and in passing upon the caveat we shall treat her right to protest the will as based upon her virtual, and not upon her legal adoption.

2. The parol obligation to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted on by both parties during the obligor's life, may be enforced in equity upon the death of the obligor by decreeing the child entitled as a child to the property of the obligor if the latter dies without disposing of his property by will. *Crawford* v. *Wilson*, 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773); *Heery* v. *Heery*, 144 *Ga.* 467 (87 S. E. 472); *Lansdell* v. *Lansdell*, 144 *Ga.* 571 (87 S. E. 782), *Rahn* v. *Hamilton*, 144 *Ga.* 644 (87 S. E. 1061); *Richardson* v. *Cade*, 150 *Ga.* 535, 538 (104 S. E. 207); *Copelan* v. *Monfort*, 153 *Ga.* 558, 565 (113 S. E. 514); *Ansley* v. *Ansley*, 154 *Ga.* 357 (114 S. E. 182).

3. A person claiming an interest in the estate of a testatrix, by reason of a virtual adoption, has such an interest in the estate as will authorize him to file a caveat to the will of the testatrix, when by the probate of such will he will be deprived of such interest. A contrary holding would deny to a party at interest in the estate, other than as heir, an opportunity to attack the probate, and thereby as against such party make the probate conclusive, thus defeating his interest in the estate of the testatrix. *Hooks* v. *Brown*, 125 *Ga.* 122 (53 S. E. 583); *Churchill* v. *Neal*, 142 *Ga.* 352 (82 S. E. 1065); Redfearn on Wills, 210, § 117.

4. This ruling is not in conflict with the principle that the contract to adopt is not self-operating; that heirship does not grow out of it; that the right to take an estate as an heir at law exists only by operation of law; and that a person claiming by virtual adoption can only enforce his claim through a court of equity. *Pair* v. *Pair*, 147 *Ga*. 754 (95 S. E. 295). Nor is our ruling in conflict with the principle that upon an appeal by consent, from the court of ordinary to the superior court, of a proceeding to probate a paper as a will, the latter court becomes quoad hoc a probate court, and is limited to the issue of devisavit vel non, and is without jurisdiction in the exercise of its equity powers to determine the equitable right of a virtually adopted child to an interest in the estate of the foster parent. *Field* v. *Brantley*, 139 *Ga*. 437 (77 S. E. 559). These rulings do not prevent a person from alleging and proving her adoption by another, whose alleged·will is offered for pro-bate, for the purpose of showing that she has such an interest in the estate of the foster parent as will entitle her to contest the probate of such instrument which wholly excludes her from participation in the estate.

5. The issue as to whether or not the caveatrix had been virtually adopted by the testatrix was submitted to the jury trying the issue of devisavit vel non; and the jury was instructed by the court that, if they should find against her virtual adoption by the testatrix, they should find against the caveat. This was proper procedure. *Varnedoe* v. *Cousins*, 148 *Ga*. 229 (96 S. E. 320).

6. The court did not err in overruling the other grounds of the general and special demurrers.

7. Counsel for the propounder requested the court to sequester the wit-nesses. Counsel for the caveatrix requested the court to permit the husband of the caveatrix to remain in court, to assist her counsel in the trial of the case. To this the propounder objected. The court permitted the husband to remain in court, but required that he should be sworn as the first witness for the caveatrix, which was done. *Held*, that it was within the discretion of the trial judge to permit the husband of the caveatrix to remain in the court-room to aid her counsel in the trial of the case; and there was no abuse of this discretion in this case, requiring the grant of a new trial, especially as the court required him to be sworn as the first of the witnesses for the caveatrix. *Central R. Co.* v. *Phillips*, 91 *Ga*. 526 (17 S. E. 952); *City Electric Ry. Co.* v. *Smith*, 121 *Ga*. 663 (49 S. E. 724).

8. In the second, third, fourth, and fifth grounds of the amendment to his motion for new trial the propounder complains of the admission of oral and documentary evidence over his objection. These grounds do not set out such evidence literally or in substance. Each ground refers to the pages of the brief of evidence where such evidence can be found. It is now the well-settled rule that these grounds raise no questions for de-cision by this court. *Duncan* v. *Campbell*, 154 *Ga*. 824 (115 S. E. 651).

9. In the sixth ground of this amendment the propounder alleges that the court erred in permitting a witness to testify in behalf of the caveatrix, over his objection that the testimony was irrelevant, incompetent, and

hearsay, as follows: "I am an evangelist, and I am going to be free to say that I have been east, west, north, and south, and never in my life have I had a more favorable impression made upon me than Brother and Sister Mobley have made as being a perfect type of a perfect Christian gentleman and lady." This evidence was part of a conversation between the testatrix and the witness. In this conversation the testatrix stated to this witness that she was fearful that her daughter (caveatrix) and son-in-law (husband of caveatrix) would poison her. This evidence, objected to by propounder in this ground, was the reply of the evangelist to this statement of the testatrix, who then said, "Well, if you could hear some of my relatives talk in Monticello, you might change your mind." Propounder lived in Monticello. Standing alone this evidence was inadmissible, but as it was a conversation between the witness and testatrix, and was necessary to explain her statement in reference to the cause of her fear of being poisoned by the caveatrix, we do not think it was irrelevant.

10. In the seventh ground of the amendment to his motion for a new trial the propounder alleges that the court erred in permitting a witness for the caveatrix to testify that the testatrix said to her that the caveatrix was her legally adopted daughter. Propounder objected to this testimony, on the ground that no legal adoption of the caveatrix had been proved, and that such testimony was incompetent and inadmissible, even if tending to show a virtual adoption, because such adoption would give the caveatrix no legal right to file a caveat to the will offered for probate. Under the ruling made in the third headnote, this objection was without merit.

11. In the eighth ground of this amendment the propounder alleges that the court erred in permitting a witness for the caveatrix, over his objection, to testify as follows: "One afternoon in May, this last May was a year ago, I was up at her house, and she and I went in the rose garden and after we had gotten through her rose garden we went out on the back, that would be facing Mr. Mobley's house, and the roses were in bloom all over the fence, and I spoke of it being such a lovely little home, because it is a little brick bungalow, and she says, 'Yes, it is just beautiful,' and she says, 'Miss Minnie, I don't say it because it is my daughter and I raised her, but she is one of the most beautiful housekeepers that I have ever known, and I expect that at my death that she will step into my shoes, come right into my house and take care of it just as she has taken care of this home.'" The propounder objected to this testimony, on the ground that it was a declaration by the testatrix antagonistic to the provisions of the will and in disparagement thereof, made two and a half years after its execution. On admitting this evidence the court instructed the jury as follows: "Gentlemen, any declaration made by the alleged testatrix after the execution of this will would not be relevant testimony for the purpose of showing that she did not execute a will, but it would be admissible for this purpose: for the jury to take into consideration in passing on the question as to her mental condition at the time of the execution of the will." *Held,* that this evidence was properly admitted on the issues made by the

caveat, not as evidence of the facts therein stated, nor as evidence of undue influence, or mistake as to the conduct of the caveatrix, but solely for the purpose of showing the state of testatrix's mind, and that she was then in such mental condition as to be unduly influenced by another. *Purser* v. *McNair*, 153 *Ga.* 405 (112 S. E. 648).

12. In the tenth ground of this amendment the propounder complains that the court erred in overruling his motion to rule out all the testimony, both oral and documentary, offered by caveatrix in support of her contention that there was a virtual adoption of her by testatrix and her husband, on the ground that such virtual adoption would give her no standing in court to file a caveat to the will sought to be probated. In the third paragraph above we have held against this contention of propounder, and it follows that the court did not err in overruling this motion.

13. In the eleventh ground of his amended motion for new trial propounder complains that the court erred in giving long extracts from the charge to the jury, which embrace several legal propositions. One of these propositions was this: "If you are satisfied by a preponderance of the testimony in this case that in 1895 Mrs. Mobley was a child of about 5½ years of age, if you are further satisfied that at that time she was in the care and custody and control of one Mrs. Wolfe, and if you are further satisfied, gentlemen of the jury, that Mrs. Wolfe turned her over to Mr. H. H. Ezell and Mrs. Leila P. Ezell under a contract that they were to take her to their home and maintain and educate her as her child and to make her their heir, if that was the contract and agreement and if Mrs. Mobley has substantially complied with her part of the contract, gentlemen of the jury, while she would not be a statutory adopted child of Mr. and Mrs. Ezell, she would be what the law calls an equitable adoption, and if that was the agreement and she has performed her part of the agreement, why then if there was such an agreement, it would be binding upon the parties; but if there was no such agreement, why then of course Mr. H. H. Ezell and Mrs. Leila P. Ezell would not be bound by it." Another instruction was this: "Now the law defines what is a contract: A contract or an agreement is an agreement between two or more parties to do or not to do a certain thing; and when you go to your jury-rooms, you take all the written testimony in this case and you take all the oral testimony, gentlemen of the jury, and if under the principles of law you reach the conclusion that Mrs. Mobley was not the equitably adopted child of Mrs. Leila P. Ezell, why then it would be your duty to find against this caveat in the case, because, unless she was the equitably adopted child of Mrs. Leila P. Ezell, she would have no right in law to file a caveat to the proving of this will in solemn form. But, gentlemen of the jury, in the event you reach the conclusion under the law as given you in charge by the court, and this is entirely a question of fact for your consideration and for your determination, because the court does not pretend to express or to intimate to you that she was the equitably adopted child of Mrs. Leila P. Ezell—that is entirely a question of fact for your consideration and for your determination; but in the event, gentlemen of the jury, you reach the

conclusion that she was the equitably adopted child of Mrs. Leila P.
Ezell, under the law as given you in charge by the court applied to the
facts and evidence in this case, then you take up the issues involved in
the trial of this case as made by the other parts of this caveat which
will be out before you, and then the burden of proof in this case would
be upon Mrs. Mobley to satisfy your minds by a preponderance of the
testimony of the truthfulness of all the grounds of the caveat or one or
some of the grounds of the caveat." Propounder assigns error upon
these instructions upon the grounds: (a) that a virtual adoption can
not be proved by a mere preponderance of the evidence, but the proof of
such adoption must be so clear, strong, and unambiguous as to leave no
reasonable doubt in the minds of the jury that such virtual adoption
was actually had; and (b) because the court erred in giving to the jury
any instruction whatever in reference to what constitutes a virtual
adoption and the rights of the caveatrix thereunder. *Held:* (1) In all
civil cases the preponderance of the testimony is considered sufficient to
produce mental conviction. Civil Code (1910), § 5730. Notwithstanding
this declaration of the Code, this court has held that, to authorize
specific performance of a parol contract for the sale of land or to
authorize reformation of a written contract for such sale, the evidence
must be so clear, strong, and satisfactory as to leave no reasonable
doubt as to the agreement. *Redman* v. *Mays*, 129 *Ga.* 435 (59 S. E.
212); *Williams* v. *Segers*, 147 *Ga.* 219 (93 S. E. 215); *Gordon* v. *Spell-
man*, 148 *Ga.* 394 (96 S. E. 1006); *Lloyd* v. *Redford*, 148 *Ga.* 575 (97
S. E. 523); *Allen* v. *Allen*, 151 *Ga.* 287 (5) (106 S. E. 81). In *Pair* v.
*Pair*, 147 *Ga.* 754, 757 (supra), Justice George said a parol contract of
adoption would be enforced if "proof of it be strong, clear, and satis-
factory." Conceding that oral contracts of adoption must be so clear,
strong, and satisfactory as to leave no reasonable doubt as to the agree-
ment (1 C. J. 1379, §§ 28-30), is the same principle applicable if the
contract is evidenced by writing? This principle does not rest upon the
ground that such contracts are in disfavor or are against public policy,
but upon the ground that as they rest upon parol testimony they may
be easily fabricated by designing persons, when the other party to the
contract is dead. Middleworth *v.* Ordway, 98 N. Y. Supp. 10 (49 Misc.
74). This evil does not exist if the contract is evidenced by writing.
For this reason the charge of the court complained of is not erroneous.
(2) The other objection to this charge is without merit, in view of our
ruling set out in the third paragraph above.

14. In the twelfth ground of this amendment the propounder alleges that
the court erred in failing, when timely requested in writing, to charge
the jury as follows: "I charge you that the execution of an instrument
purporting to be a will can not be disproven by declarations made by
the testatrix after she made the will." It is insisted that the court
should have given this principle in charge to the jury, because it had
admitted certain alleged declarations of the testatrix antagonistic to
and in disparagement of her will. In view of the instruction given by
the court to the jury in admitting this testimony, which instruction is
fully set out in headnote eleven, we do not think the failure of the court

to repeat this instruction in his general charge requires the grant of a new trial.

15. There is some evidence to support the verdict; and as the same has received the approval of the trial judge, we will not disturb the same.

*Judgment affirmed. All the Justices concur, except Gilbert, J., dissenting.*

No. 4664. AUGUST 12, 1925. REHEARING DENIED SEPTEMBER 23, 1925.

Appeal. Before Judge Park. Jasper superior court. December 5, 1924.

C. T. Ezell, as nominated executor, offered for probate in the court of ordinary of Jasper County an instrument purporting to be the last will of Leila P. Ezell. Louise Ezell Mobley, alleging herself to be "an heir at law by adoption of Mrs. Leila P. Ezell, deceased, and by virtue of said adoption" that she "doth bona fide claim to be the sole heir at law in and to the entire estate of said deceased," caveated the probate of said will upon the grounds: (1) that testatrix was not of sound and disposing mind and memory; (2) that she "did not execute the said pretended will freely and voluntarily, but was moved thereto by undue influence and persuasion over her by C. T. Ezell, a legatee and propounder, Mrs. Zaidee Jordan, Mrs. Anna Wynn, and Mrs. Mattie Thompson, legatees, and other parties unknown to caveatrix, to the effect that caveatrix did not love her, had turned against her, was liable to poison and kill her for her property, while the said Mrs. Leila P. Ezell was suffering from excessive use of morphine and other narcotics to such an extent that her mind and will power was so weakened and distorted as to destroy her freedom and volition, and said pretended will is the product of the influence and persuasions of C. T. Ezell and others, exaggerated and distorted by her excessive use of narcotics, and the same is not the free and voluntary will of said Mrs. Leila P. Ezell; . . that following visits of C. T. Ezell, Mrs. Zaidee Jordan, Mrs. Anna Wynn, and Mrs. Mattie Thompson, named in the alleged will, that the said Mrs. Leila P. Ezell acted coldly towards caveatrix, her husband and children, showing fear for her life from poisoning, and other aloofness from caveatrix, and that same grew or increased rapidly with the visits, consultations, and conversations between Mrs. Leila P. Ezell and the said C. T. Ezell and other legatees named in the alleged will; and said paper having been executed under the undue influence and persuasions, the same is void;" (3) "that the said Mrs. Leila P. Ezell was imposed upon by false representa-

tions of caveatrix in the making of said pretended will, made by C. T. Ezell, Mrs. Zaidee Jordan, and Mrs. Mattie Thompson, and to the effect that caveatrix was an ingrate, did not love her, had turned against her, and was not her friend and on the contrary her enemy, all of which representations were false, because caveatrix did love, honor, and respect said deceased to the last and revered her as a dutiful daughter in every respect;" and that "the said undue influence and persuasions caused Mrs. Leila P. Ezell to become estranged from caveatrix and to reject her services and efforts to comfort and console her after the death of her husband, H. H. Ezell, and caveatrix stood ready, willing, and anxious to render to her every assistance and service, to nurse and comfort her in her last days on earth, but was bluntly excluded from her presence by the said C. T. Ezell and said legatees under said pretended will, who held her under the influence of themselves by such false and fraudulent representations, thereby deceiving her and coercing her, destroying her freedom of will power, and substituting their own wishes and desires for hers and impelling her to accede to their persuasions and to make the said pretended will largely in their favor, and excluding caveatrix therefrom, and because of said false representations the said alleged will is inoperative as to your caveatrix;" (4) "said pretended will was procured by misrepresentations to the injury of caveatrix, the sole heir at law of said Mrs. Leila P. Ezell, said misrepresentations having been made by C. T. Ezell, Mrs. Zaidee Jordan, Mrs. Anna Wynn, and Mrs. Mattie Thompson, and being misrepresented as to the purpose of and her designs upon Mrs. Leila P. Ezell and her property to the extent that caveatrix had no love or affection for her and was only seeking to acquire her property, that if she continued to live with them she would likely die mysteriously, and that caveatrix was liable to poison her or otherwise to bring about her death for the purpose of acquiring her property; and they thus aroused her fears for life and safety, which fears were exaggerated and magnified by the excessive use of morphine and other drugs (which use of narcotics was well known to said C. T. Ezell and other legatees under the said pretended will), and which fears grew and increased along and with the visits of said C. T. Ezell and other legatees, all of which representations were false; while on the contrary and from the time of the death of H. H. Ezell

for a long period caveatrix, her family, and Mrs. Leila P. Ezell all lived together as one family in entire peace and harmony, all exhibiting love and affection each for the other, during which time the said Mrs. Leila P. Ezell being in bad health, caveatrix made extra efforts to make her comfortable, waited on her, nursed her, and did everything in her power that a daughter could do for a mother, to cherish her and make her happy, which was the condition until C. T. Ezell and other legatees named above estranged the said Mrs. Leila P. Ezell by misrepresentations, which grew with their visits and private consultations and conversations resulting in caveatrix being advised by Mrs. Leila P. Ezell that 'Brother Tom' thought it best for her to move out and away from Mrs. Leila P. Ezell, her mother, although her father, H. H. Ezell, especially directed that she live with, care for, and protect her; and for this reason said pretended will. is inoperative and void as to your caveatrix."

The propounder demurred generally to said caveat, on the grounds: (1) that its allegations show no legal reasons why the will offered for probate should not be admitted to probate; (2) that caveatrix does not by said allegations show that she has any interest in the property devised by said will, and that she is entitled under the law to object by caveat to the propounding and probating of said will in solemn form; nor does she show that she is an heir at law of the testatrix, or that under the will she has any title or interest in the estate disposed of by the will; (3) that the allegations of said caveat nowhere show any legal right of the caveatrix to appear as a party and to object by caveat to the probate of said will; and (4) that none of the grounds and reasons set out in the caveat are sufficient in law to defeat the probate of said will, but the allegations therein are vague and indefinite and fail to set out facts sufficient to show that testatrix was wanting in testamentary capacity at the time of the execution of said will. Propounder demurred specially to said caveat on the grounds: (1) that the allegations that caveatrix is "an heir by adoption of Mrs. Leila P. Ezell, deceased, and by virtue of said adoption doth bona fide claim to be the sole heir at law in and to her entire estate," are insufficient in law to authorize the court to permit her to appear as a party to said cause and to caveat the probate of said will, as "it does not appear from said allegation that the said

Mrs. Louise Mobley was ever legally adopted as the child of said testatrix, nor does it appear from said caveat that any judgment of any court providing for any such adoption as required by law, as provided for in § 3016 of the Code of Georgia, was ever had;" (2) that "failing to allege that there was an adoption according to law, the presumption is authorized that no such judgment was ever had, and therefore the said caveatrix had no right or claim to or interest in or to the property of testatrix, and no legal right to appear as a party in this cause, and to file her said caveat." (3) Propounder demurred specially to paragraphs 1, 2, 3, and 4 of said caveat, on the ground that the allegations therein are vague and indefinite and state no facts which would authorize the setting aside of said will.

By consent the case was appealed from the court of ordinary to the superior court. On the hearing in the latter court the judge overruled said demurrers on each and all the grounds thereof.

Caveatrix amended her caveat upon the grounds: (5) that at the time of the making of said pretended will the testatrix was afflicted with monomania upon the subject of caveatrix and her attitude towards testatrix, testatrix believing that caveatrix did not love testatrix as a daughter should love her mother, that caveatrix was liable to poison her or bring about her death in some mysterious manner for the purpose of acquiring her property; which belief had no foundation in fact and was entirely a delusion which operated upon and controlled the mind of said testatrix at the time of the execution of said pretended will, and caused her to wholly disinherit caveatrix, her legal heir at law; (6) that after the death of the husband of testatrix propounder and one of the beneficiaries under the will, and the brother-in-law of testatrix, began to visit her with great frequency, making two or three visits a week, holding long conversations with testatrix in her home, at which time testatrix was engaged in litigation over a parcel of land in Jasper superior court, and said visits were ostensibly in aid of testatrix in said litigation. Propounder advised testatrix in her general business affairs, ingratiated himself into her confidence, and brought her to trust in and rely upon him in her business affairs, and thus propounder gained complete control and dominion over testatrix, which influence, dominion, and control continued and lasted throughout her life, including the time of

the execution of said pretended will. While exercising said dominion over testatrix the said C. T. Ezell, Mrs. Zaidee Jordan, Mrs. Anna Wynn, and Mrs. Mattie Thompson, counseled and advised testatrix that caveatrix was not her legally adopted child, and that she was under no obligation to caveatrix, that caveatrix did not love her and only sought to get her property, that caveatrix was not entitled to share in the estate of H. H. Ezell, and that caveatrix would likely poison her or cause her to die mysteriously, for the purpose of acquiring her property; all of which representations were false and were made by the said C. T. Ezell and for the purpose of ingratiating themselves into the good graces of testatrix, and which false representations and belief in them caused testatrix to execute said pretended will, whereby caveatrix was totally disinherited. Said false representations were made by the said C. T. Ezell and the other legatees named to the said testatrix for the sole purpose of affecting and controlling her mind and substituting their will for hers.

To this amendment the propounder demurred upon the ground that the allegations thereof are insufficient in law to defeat the probate of the will; that said allegations are vague and indefinite and fail to set up facts sufficient to show that testatrix was wanting in testamentary capacity, or that said will was made as the result of undue influence exercised over her by the said legatees named in said amendment, and because the allegations do not show that the facts and circumstances therein set out are such in law as constitute undue influence. The propounder demurred specially to paragraph 5, upon the grounds: (1) that the allegations thereof are vague and indefinite, and no facts are alleged which show that said will was not freely and voluntarily made by testatrix at the time of its execution, and are mere deductions and inferences drawn from such facts, and are mere general allegations which do not constitute undue influence; and (2) because said paragraph does not allege that the delusion set up therein was not untrue and that said delusion was the sole cause which operated upon the mind of the testatrix in making her will. Propounder demurred specially to paragraph 6, upon the grounds, that (a) said allegations are vague and indefinite and do not show the existence of any facts which would authorize the court to set aside the will; (b) because said allegations are mere conclusions, and (c) be-

56

cause that portion of said paragraph commencing with the words, "that while exercising said influence," down to the end of said paragraph, are insufficient in law to constitute undue influence, or such undue influence as would justify the setting aside of the will; nor is it alleged in what said false representations consist with that particularity which the law requires, and that if the testatrix was influenced thereby that did not constitute undue influence; and because there is no allegation that the making of the will was due solely to the making of said false representations. The court overruled the demurrer to the amendment. The propounder excepted to this ruling. The case proceeded to trial, and the jury found a verdict in favor of the caveatrix. The propounder moved for a new trial on the general grounds. By amendment he added certain special grounds, which are sufficiently referred to in the opinion of this court. The judge overruled the motion for new trial, and to this judgment the propounder excepted. The evidence introduced upon the trial of the case was voluminous; and a summary thereof would be long.

*W. S. Florence, A. L. Miller, C. L. Bartlett,* and *Wallace Miller,* for plaintiff.

*W. H. Key* and *A. S. Thurman,* for defendant.

Gilbert, J., dissenting. I am of the opinion that one who has not been legally adopted as the child of a testator, but relies upon a "virtual adoption," has no such interest in the estate of the latter as will entitle her to file a caveat to the probate of the will, until she has first obtained a decree in equity adjudicating the fact that she is an equitably adopted child. For this reason the court should have sustained the demurrer to the caveat. One who has no interest in an estate should not be heard as to its distribution. If the issue as to such interest may be tried after the trial on the probate of a will, cases may arise where a will may be set aside and nullified by a person afterwards adjudicated not to have any interest in the estate. In *Crawford* v. *Wilson,* 139 *Ga.* 654 (supra), which was an equitable petition brought by the virtually adopted child against the administrators of the adopted parent, to enforce specific performance of the parol contract of adoption, with reference to the legal status of such child it was said that "she had no legal status as heir; and as only heirs and creditors may contest with an administrator respecting the ad-

ministration of the property of his intestate, she was forced into equity to establish her equitable claim to the property which defendants were proceeding to administer as the property of their intestate." It was further held that, having an equitable interest, and being in a court of equity, she had the right to preserve the status of the estate "until final decree" establishing her rights.