HALL, executor, *v.* BURPEE.

No. 9145. JANUARY 11, 1933. REHEARING DENIED FEBRUARY 21, 1933.

*Tye, Thomson & Tye, Westmoreland & Westmoreland, R. O. Jones, Hamilton Hall, Walter Sanders, W. L. Stallings,* and *William Y. Atkinson,* for plaintiff.

*Terrell & Terrell, Stanford Arnold, Howell, Heyman & Bolding,* and *Allen Post,* for defendant.

BECK, P. J. H. A. Hall, named as executor in the will of Miss Dorothy Burpee, offered to probate the will in solemn form in the court of ordinary of Coweta County. S. T. Burpee, alleging himself to be an heir at law of the testatrix, filed his caveat to the application for probate. The will was admitted to probate in solemn form, and an appeal was taken. In the superior court the caveator amended his caveat and added thereto the following:

"1. At the time of making and executing said pretended will and codicil said Miss Dorothy Burpee was afflicted with monomania against her brother, this caveator, she insanely supposing and be-

lieving that he had endeavored and intended to endeavor to kill her or do her great bodily harm or to burn or destroy her property, and further insanely supposing and believing that since marriage was wrong, and that since caveator alone of the children of her parents had married, he had ceased to be a member of her family or her brother, ceased to be entitled to treatment and affection as a kinsman and a brother, all of which were insane delusions constituting monomania against caveator, and were produced by and the result of said monomania, and the offspring of a diseased and disordered mind and intellect, and thereby deprived her of testamentary capacity towards her brother at time of making and executing said alleged will and codicil. Said insane delusions she insanely conceived to exist when they had no actual existence whatsoever, and she was incapable of being reasoned permanently out of said conception, and said insane delusions sprang up spontaneously in the mind of Miss Dorothy Burpee, and were not the result of evidence of any kind and had no foundation in fact, but sprang from a diseased condition of her intellect. For the caveator never at any time nor in any manner whatsoever endeavored or sought in the slightest way or intended to endeavor to injure or harm, bodily or otherwise, his said afflicted sister, or to burn or otherwise destroy or injure or interfere with any of her property, nor ever conceived any such idea. Nor had caveator ceased to be a member of her family or entitled to treatment, affection, and claims as such, but was her only brother and heir at law at time of making said pretended will and codicil. With an affectionate sympathy and pitying love of a natural and devoted brother, he at all times loved her and pitied her in her mental afflictions. Said insane delusions were the cause of the making and execution of said pretended will and codicil, which pretended will and codicil were the result of said insane delusions.

"2. For that Miss Dorothy Burpee executed said pretended will and codicil under a mistake of fact as to the conduct of caveator, the sole heir at law of deceased, in this, that she supposed and believed that caveator had endeavored and attempted, and intended to endeavor and attempt to kill her or do her great bodily harm or to burn or destroy her property; whereas caveator was totally innocent of such conduct or such idea, and was at all times devoted and forbearing and respectful and forgiving towards his sister,

Miss Dorothy Burpee. While she was in this condition of mistake of fact, and while she was laboring under and believing in said mistake of fact, said pretended will and codicil were made and executed as a result of said mistake of fact. Said mistake of fact had no foundation whatsoever in fact."

The propounder demurred on the grounds (1) that paragraph 1 of the caveat states merely a conclusion of the pleader; (2) that paragraph 2 of the caveat does not set forth facts upon which the monomania and insane delusion are based, etc.; (3) that paragraph 3 merely states the conclusion of the pleader, etc.; and (4) that the copy of the codicil clearly and distinctly sets forth the grounds upon which the testatrix left one dollar only to the caveator, etc. The court rendered the following judgment: " . . Paragraphs 1 and 4 of the above demurrer are hereby overruled. Said demurrer is also overruled in so far as same refers to the charges in said caveat as amended, referring to monomania and insane delusions. Said demurrer is sustained in so far as same refers to the allegations of said caveat, as amended, that refer to any mistakes of fact as being grounds or reasons why caveat should be sustained and the probate of said will denied, and the grounds of said caveat as amended, setting out said alleged mistakes of fact, are hereby stricken." To this judgment the propounder excepted.

■ The judgment on the demurrer was not erroneous as against the propounder. The allegations in the caveat relating to insanity of the testatrix were sufficient, and the allegations of monomania were also sufficient to withstand the demurrer. In *Stephens* v. *Hughey*, 174 *Ga.* 561 (162 S. E. 915), the following is found in the opinion: "The fourth ground of caveat alleges that 'at the time of the making and executing of said pretended will said Paul T. Hughey was not of sound and disposing mind; that he did not execute the said pretended will freely and voluntarily, but was moved thereto by the undue influence,' etc. . . This ground was demurred to upon the ground that these statements are 'mere conclusions of the pleader and are insufficient . . to require defendant to probate said will in solemn form, because the grounds alleged therein are insufficient to raise any grounds of the illegality of said will or to base a finding or adjudication by the court that the will probated in common form is not the will of the said Paul T. Hughey.' As this demurrer goes to the entire ground, the

court properly overruled it, because the allegation that at the time of making and executing the will Paul T. Hughey was not of sound and disposing mind and memory was sufficient to raise the question of devisavit vel non." The allegations as to the testatrix being afflicted with monomania were sufficient to withstand the contention that they stated only conclusions of the pleader, and not facts. The ground of caveat setting up the contention that the testatrix was afflicted with monomania as related to the caveator is quoted in the first part of this opinion. Reading of this paragraph shows that the facts were sufficiently set forth.

■ The ruling in headnote 2 requires no elaboration.

■ Exception is taken to the refusal of a request to charge the jury as follows: "The wills executed in 1909 by each the testatrix and her two brothers, George T. Burpee and T. Glenn Burpee, have been introduced in evidence, and the wills of T. Glenn Burpee and the testatrix, Dorothy Burpee, made in 1922, have all been introduced for the purpose of showing a fixed purpose and intention on the part of the testatrix at the time of their execution, and to show in each and all of said wills by the testatrix and her brothers the caveator had been left nothing; and I charge you that this evidence has been admitted for the purpose of showing, if it does show, that the testatrix at the time the former wills were made had a fixed intention of leaving out the caveator from any participation in her estate, and carried out the same intention in the execution of her will made on the first day of October, 1925, and in her codicil on the 19th day of February, 1929." There is no fact alleged in connection with this ground to show for what purpose the evidence referred to was admitted, or that it illustrated in any way or supported in any way the contention of the movant here.

■ ■ The rulings stated in headnotes 4 and 5 need not be elaborated.

■ Exception is taken to the following instructions in the charge of the court: "An insane person, gentlemen, can not generally make a will. Eccentricity of habit or thought does not deprive a person of power of making a testament; old age, and the weakness of intellect resulting therefrom, does not of itself constitute incapacity. If that weakness amounts to imbecility, the testamentary capacity is gone. In cases of doubt as to the extent of this weakness, the reasonable or unreasonable disposition of his or her estate

should have much weight in the decision of the question. That is, gentlemen, so far as this proposition is concerned, if there is doubt in your mind on that proposition, then the law says that the reasonable or unreasonable disposition of his or her estate should have much weight in the decision of the question. You understand, of course, this proposition of law would not be applicable if there was no doubt in your minds on that question, that being a question for you to determine.

"An incapacity to contract may coexist with a capacity to make a will; the amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable a party to have a decided and rational desire as to the disposition of his or her property. His or her desire must be decided, in distinction from the wavering, vacillating fancies of a distempered intellect. It must be rational, in distinction from the ravings of a madman, the silly pratings of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard. . . A person has testamentary capacity who understands the nature of a testament or will, viz., that it is a disposition of property to take effect after death, and who is capable of remembering generally the property subject to his disposition and the persons related to him or her by ties of blood and affection, and of conceiving and expressing an intelligent scheme of disposition.

"Gentlemen, upon this issue in this case between the propounder, H. A. Hall as executor, and the caveator Sam C. Burpee, and the brother of the deceased, Dorothy Burpee, you look to the evidence. If you should find from the evidence that Dorothy Burpee did not have the mental capacity which I have defined to you, then the paper offered for probate would not be her will. If, on the other hand, you find from the evidence that she did have, at the time of the execution of this will and the codicil, the mental capacity which I have defined to you, that is, that she understood the nature of a testament or will, that it was a disposition of property to take effect after her death, and that she was capable of remembering generally the property subject to her disposition, and the persons related to her by the ties of blood and affection, and capable of conceiving and expressing an intelligent scheme of disposition, then, so far as this ground of the caveat is concerned, the jury would return a verdict in favor of the propounder. That is a question of fact in the case, for you to determine in the light of all the evidence.

"I call attention to this, gentlemen, in this connection: Eccentricity of habit or thought does not deprive a person of power of making a testament. Certain evidence has been admitted here, at various times both before and after the date of the instrument offered here as the will of Dorothy Burpee. I have admitted certain sayings claimed to be the sayings of Dorothy Burpee. Whether or not there is any evidence of her sayings is a question for you to determine. You will look to the evidence in the case. What she may have said both before and after the execution of the alleged will, if the evidence shows she said anything, you will consider that sort of evidence alone for the purpose of determining the condition of her mind; that is, her mental capacity, what it was. You will determine what her mental capacity was at the time it is alleged she made the will, also at the time it is alleged she made the codicil, the papers offered here and claimed to be the last will and testament of Dorothy Burpee; and in order to determine that question, you may consider the evidence that is offered here, if any, before that time, or at that time, or since that time; and if any evidence has been offered here as to her sayings, by the evidence, her sayings can be considered by the jury for no other purpose than illustrating, if it does do so, her mental condition,—whether or not at the time the alleged will was executed and the codicil was executed Dorothy Burpee had mental capacity sufficient to make a valid and binding will. This sort of evidence of her sayings is not admitted to show any other fact.

"If the jury finds from the evidence that at the time the will offered and the codicil offered here in evidence was executed, that Dorothy Burpee did not have sufficient mental capacity to make a will, under the law as I have given you in charge, that would end the case, and you should return a verdict accordingly. But if you find from the evidence in the case that at the time the alleged will was made, that generally Dorothy Burpee was of sound and disposing mind and memory, that she had sufficient mental capacity to make a will, then it should be set up by the verdict of the jury.

"As before stated to you, gentlemen, any evidence upon that subject, evidence of the sayings, if any has been offered, of the sayings of Dorothy Burpee, is admitted solely for the purpose of shedding light as to the respect of her mind, her mental condition at the time of the execution of the alleged will and the alleged codicil.

If you should find at the time of the execution of the will that she did have sufficient mental capacity, generally speaking, to make a valid and binding will, then, you should find against that ground of caveat by your verdict."

These instructions were not erroneous upon the ground that there was no evidence authorizing them, or that the undisputed and positive evidence required a finding by the jury that at the time of the execution of the will and codicil the testatrix was of sound and disposing mind; nor did the charge tend to confuse and mislead the jury. The same ruling is applicable to the assignments of error on the part of the charge set forth in the 13th ground of the motion for new trial.

 The rulings stated in headnotes 7 to 11, inclusive, require no elaboration.

 In the 19th ground exception is taken to the following charge of the court: "Certain evidence has been admitted here, gentlemen, at various times before and after the date of the instrument offered here as the will of Dorothy Burpee. I have admitted certain sayings claimed to be the sayings of Dorothy Burpee. Whether or not there is any evidence of her sayings is a question for you to determine. You will look to the evidence in the case. What she may have said both before and after the execution of the alleged will, if the evidence shows she said anything, you will consider that sort of evidence alone for the purpose of determining the condition of her mind; that is, her mental capacity, what it was. You will determine what her mental capacity was at the time it is alleged she made the will, also at the time it is alleged she made the codicil, the papers offered here and claimed to be the last will and testament of Dorothy Burpee; and in order to determine that question, you may consider the evidence that is offered here, if any, before that time, or at that time, or since that time, and if any evidence has been offered here as to her sayings, by the evidence, her sayings can be considered by the jury for no other purpose than illustrating, if it does do so, her mental condition,— whether or not at the time the alleged will was executed and the codicil was executed Dorothy Burpee had mental capacity sufficient to make a valid and binding will. This sort of evidence of her sayings is not admitted to show any other fact." This charge was not error. In *Ezell* v. *Mobley*, 160 *Ga.* 872 (129 S. E. 532),

the propounder assigned error on the admission of testimony as to a saying or a declaration of the testatrix. On admitting this evidence the trial court instructed the jury as follows: "Gentlemen, any declaration made by the alleged testatrix after the execution of this will would not be relevant testimony for the purpose of showing that she did not execute a will, but it would be admissible for this purpose: for the jury to take into consideration in passing on the question as to her mental condition at the time of the execution of the will." This court held that "this evidence was properly admitted on the issues made by the caveat, not as evidence of the facts therein stated, nor as evidence of undue influence, or mistake as to the conduct of the caveatrix, but solely for the purpose of showing the state of the testatrix' mind, and that she was then in such mental condition as to be unduly influenced by another;" citing *Purser* v. *McNair,* 153 *Ga.* 405 (112 S. E. 648). In *Dennis* v. *Weekes,* 51 *Ga.* 24, it was held that certain declarations of a testator were admissible "not to prove the fact that fraud was practiced upon him, or that undue influence was actually exercised, but as tending to show the state of the testator's mind, and that he was in a condition to be easily influenced." In *Mallery* v. *Young,* 94 *Ga.* 804 (22 S. E. 142), it was said: "The declarations of the testator were admissible to show the state of his mind at the time of executing the will, but were not admissible for the purpose of showing that the facts stated by him were true." In *Pennington* v. *Perry,* 156 *Ga.* 103 (118 S. E. 710), it was said: "The court ruled that the evidence [of testatrix's declarations] was admissible for consideration in passing upon the question as to whether or not the testatrix had testamentary capacity to make a will. This ruling was not error. The declaration of the testator was admissible as evidence on the question of mental capacity;" citing cases. There are numerous other decisions of comparatively recent date in which this court laid down the same rule and discussed the reasons for the rule at length, which render further discussion or citation of authorities unnecessary.

■ Error is assigned on the following charge: "A witness may be impeached by disproving the facts testified to by him. A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. When thus impeached, he may be sustained by proof of general

good character, the effect of the evidence to be determined by the jury. The credibility of a witness is a matter to be determined by the jury." Movant insists that this charge was error, "because in it the court commingled section 5880 of the Code and parts of section 5881; that the effect of the charge was to instruct the jury that when a witness had been impeached by disproving facts testified to by him, he might then be sustained by proof of general good character, the effect of the evidence to be determined by the jury; whereas, under the law, a witness impeached by disproving facts testified to by him can not be sustained by proof of general good character;" also "because no effort had been made to impeach any witness by contradictory statements previously made by him as to matters relevant to his testimony and to the case, and therefore the portion of the charge quoted relating to impeachment by proof of contradictory statements was inapplicable to the case." In view of the evidence and the rulings by this court in reference to such questions, the charge of the court under consideration was not error. It is true that this part of the charge does contain section 5880 and a part of section 5881, but the parts of both of those sections charged which are excepted to were applicable in this case. It is true that this court has held: "Whatever authorities elsewhere may say on the subject, in Georgia it has never, so far as we are aware, been considered as law that a witness impeached by disproving the truth of his evidence, but not otherwise, could be sustained by evidence of his good character. It would certainly multiply witnesses enormously and greatly lengthen out trials, if, upon every occurrence of material conflict in testimony, the general character of all the conflicting witnesses, without any direct attack upon character, should be treated as involved, and open to vindication. What might be done on one side of the conflict might also be done on the other, for it could not be known beforehand which set of conflicting witnesses would be believed by the jury, and one set would apparently be as much impeached by the conflict as the other. The consequence would be that when one witness said *no* and another *yes* touching the same matter, each of them could be supported by evidence of good character, and the result of such support would leave their credit just where it stood before. The trial court was correct in rejecting the evidence sought to be introduced." And this ruling is supported by authority. But in the

present case there was not only an attempt to show contradictory statements, but there was an attempt made to show that Burpee, the caveator, who was also a witness for himself, was not a man of good character; in fact, that he was a man of very bad character. It was not necessary that this attempt to show that he was a man of bad character should be successful, to authorize the admission of evidence to support his good character. The cross-examination of the caveator while on the stand as a witness in his own behalf indicated, and indicated strongly, that the caveator was a man unworthy of belief, because of his conduct in the past. On cross-examination he was questioned as to having been in the penitentiary, as to having made certain fraudulent conveyances; and as to having done various other things that we can hardly conceive of a man of good character being guilty of. We think the bringing out of all these facts against the caveator authorized proof of his general good character. "A witness may be asked on cross-examination questions bearing on his character which tend to throw light on matters which are proper for purposes of impeachment, even though the answers to such questions would tend to degrade, disgrace, or criminate him." 40 Cyc. 2615. Proof of good character having been offered and admitted, a charge upon the subject given by the court was authorized and appropriate. We do not set forth all the evidence offered that related to the good or bad character of the caveator. The evidence given by him upon cross-examination fills many pages in the record, and much of it bears directly upon the question of his character. The charge was not error.

The rulings stated in headnotes 14 and 15 require no elaboration.

In the course of the court's instructions to the jury they were charged as follows: "Of course, gentlemen, if you find that this woman was not afflicted with partial insanity nor of general insanity, then the jury should find in favor of the propounder. But if she was afflicted with partial insanity, or monomania, and the will was the result of and connected with the monomania, the result of the mental disease that she had, then, gentlemen, you find the issue in favor of the caveator, Sam C. Burpee, setting the will and codicil aside and finding the will and codicil is not the last will and testament of Dorothy Burpee." This was excepted to upon the

ground, among others, that it did not properly distinguish between the law applicable to the will and codicil, and because the court charged that if the jury found the testatrix was afflicted with partial insanity or monomania, and the will was the result of and connected with the monomania, they should find the issue in favor of the caveator, setting the will and codicil aside, which charge, as movant contends, was error, because it did not require the jury also to find that the codicil was the result of and connected with the monomania, and the result of said charge would have been to find against the codicil although at the time it was executed testatrix might have been perfectly sane and in possession of full testamentary capacity. Movant contends that if this was the case, and testatrix had testamentary capacity when she executed the codicil, this would have been a republication or an incorporation of the will by reference, although the will might have been executed at a time when testatrix was lacking in such capacity. And there are other similar exceptions taken to it, the language of the exceptions being somewhat varied. *

The court is of the opinion that this exception to the charge is well taken. It instructed the jury, in effect, that if the testatrix was afflicted with partial insanity or monomania, and the will was the result of and connected with the monomania, the jury should set aside the will and the codicil and find that the will and codicil were not the last will and testament of the testatrix. This was error, because, under these instructions, if the evidence authorized the jury to find that the testatrix was afflicted with general or partial insanity or monomania, and the will was the result of the insanity or monomania, they should set aside both the will and the codicil. The will was executed on October 1, 1925, and the codicil in February, 1929. If the will was executed under the influence of monomania, and the jury, under the instructions, felt they were required to set aside the will, it did not necessarily follow that the codicil, executed about four years later, ought also to be set aside, or that the jury ought to return a verdict in effect setting aside the codicil. The will as at first executed and the codicil should not have been joined in the same expression in this part of the charge; for if the will had been executed at a time when the testatrix could not make a valid will, because of monomania or general insanity, nevertheless, if at the time of the execution of the codicil she was of

sound mind and not afflicted with monomania, the codicil would be valid, and the execution of a valid codicil, such as the one in this instance, would have the effect of republishing the original will and declaring that instrument to be her last will and testament. "If a paper purporting on its face to be a codicil to an existing will which the testator had previously signed, refers to the will by date, and also, by mentioning certain of its provisions, unequivocally identifies it as the instrument to which the paper in question is intended as a codicil, it will be presumed that the testator, at the time of executing the codicil, knew the contents of the original will; and the due execution of the codicil, under such circumstances, will amount to a republication of the will, although the codicil is not actually attached to the will itself." *Pope* v. *Pope,* 95 *Ga.* 87 (22 S. E. 245). See also *Burge* v. *Hamillon,* 72 *Ga.* 568. So far as the charge complained of in the 26th ground of the motion fails to accord with what we have ruled above, it was error.

The ruling stated in the 17th headnote need not be elaborated.

Error is assigned upon the court's refusal of a request to give in charge to the jury the following: "The testatrix, Miss Dorothy Burpee, had a perfect right, under the law, to direct her executor, in her codicil, to destroy all of her personal property or effects in such way or manner as she might direct in said codicil; and the fact that she did so, unless she was actuated thereby from a diseased condition of the mind amounting to an insane delusion, the said provision would be perfectly valid and binding, and would not authorize the jury to set said codicil aside on account of said provision." Inasmuch as the court had not in its charge dealt with the right of a testatrix to have articles of personal property destroyed after death, this requested charge should have been given. It is not impossible that the jury, in their finding in this case, were impressed by the direction given by the testatrix that her executor should have her wearing apparel, dresses, hats, etc., as well as household linen, bedding, etc., and her household and kitchen furniture, books and pictures, bric-a-brac and other articles of personal property burnt or otherwise destroyed; and the propounder was entitled to have the jury informed that in thus directing the destruction of the articles of personal property the testatrix was exercising a right which she had under the law. It might have

been that the testatrix, in view of her long association with the articles mentioned—pictures, bric-a-brac, books, etc., having no near relative to whom she wished to leave them, desired that they should be destroyed rather than have them pass into the hands of strangers who might not appreciate them, and who might throw them in the garret or cellar and ignore them. The giving of such directions was not inconsistent with a state of perfect sanity; for a woman in a perfect state of sanity may have had such lively sentiments connected with these articles, into which she had so often been brought in personal contact, that she would not be willing for them to be bought in by strangers, perhaps for a mere song, and then cast away into some obscure place.

Except as indicated above, there were no material errors in the parts of the charge excepted to, nor was there error in refusing to give the requests to charge not specifically dealt with. As the case is remanded for another trial, no opinion is expressed as to the evidence. *Judgment reversed. All the Justices concur, except*

ATKINSON and HILL, JJ., who are of the opinion that in the grounds upon which the judgment of the court below is reversed there was no error requiring the grant of a new trial.