297 Ga. 413
FINAL COPY

S15A0395. JOHNSON v. ROGERS.

BLACKWELL, Justice.

Lillian and Jimmie Lee Johnson were married for 37 years, and together, they raised her grandniece, Jessica Rogers. In 2005, Ms. Johnson made a will that included a number of bequests to Rogers.[1] Ms. Johnson died in 2011, and Mr. Johnson then sought to probate her will. Rogers filed a caveat, asserting that she had been adopted by Ms. Johnson after the will was made, which would entitle her to an intestate share of the estate under OCGA § 53-4-48 (c).[2]

---

[1] Under the terms of the will, Ms. Johnson left her real property to Mr. Johnson, and she left a contingent, remainder interest in her real property to Rogers. Ms. Johnson left specific items of her personal property to Rogers and others. Ms. Johnson left her residuary estate to Mr. Johnson, and she gave Rogers a contingent interest in the residuary estate.

[2] Under OCGA § 53-4-48 (a), the happening of certain events — the marriage of the testator, the birth of a child to the testator, or the adoption of a child by the testator — after "the making of a will in which no provision is made in contemplation of such event" results in a "revocation of the will[, but] only to the extent provided in [OCGA § 53-4-48 (c)]." OCGA § 53-4-48 (c) provides as follows:

If the will was made prior to an event specified in subsection (a) of this Code section, and does not contain a provision in contemplation of such an event, the subsequent spouse or child shall receive the share of the estate he or she would have received if the testator had died intestate. Such share shall be paid from the net residuum remaining after all debts and expenses of administration, including taxes, have been paid. If the residuum proves to be insufficient, then testamentary gifts shall abate in the manner provided in

Although Rogers was unable to point to any statutory adoption by Ms. Johnson, she claimed nonetheless that she had been adopted pursuant to the equitable doctrine of "virtual adoption." The probate court agreed that Rogers was "virtually adopted" by Ms. Johnson after she made her will, and so, the probate court admitted the will to probate, but subject to Rogers taking an intestate share of the estate. Mr. Johnson appeals, and he argues that the doctrine of virtual adoption has no application in a case in which the decedent disposed of her entire estate by will. We agree, and for that reason, although we affirm the admission of the will to probate, we reverse the judgment that Rogers is entitled to an intestate share.

"Virtual adoption is an equitable remedy utilized when the conduct of the parties creates an implied adoption without a court order." Morgan v. Howard, 285 Ga. 512, 512 (1) (678 SE2d 882) (2009) (citation omitted). This Court first recognized the doctrine of virtual adoption in Crawford v. Wilson, 139 Ga. 654, 654 (1) (78 SE 30) (1913), noting that "[a] parol obligation by a person to adopt

subsection (b) of Code Section 53-4-63. Any bequest in the will in favor of the subsequent spouse or child shall be given effect and shall count toward the intestate share. If the bequest equals or exceeds the intestate share, then the subsequent spouse or child shall receive the bequest in lieu of the intestate share provided by this subsection.

the child of another as his own, . . . acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of the obligor, by decreeing the child entitled as a child to the property of the obligor, undisposed of by will." As we recently explained, the doctrine of virtual adoption "is applied only after the death of the person who agreed to adopt the child . . . and when there has been no legal (statutory) adoption. The child, who is often an adult by that time, is allowed to invoke the doctrine of virtual adoption to avoid an unfair result from the application of intestacy statutes." Sanders v. Riley, 296 Ga. 693, 698 (2) (770 SE2d 570) (2015) (citation and punctuation omitted). Indeed, the purpose of virtual adoption is "[t]o correct the injustice that would result were the intestacy laws woodenly applied," and "[t]he courts have traditionally limited the doctrine to narrow circumstances, reasoning that the adoption statutes are in derogation of the common law and thus provide the exclusive means for [equitably] effecting an adoption or obtaining its benefits." Jan Ellen Rein, "Relatives by Blood, Adoption, and Association: Who Should Get What and Why," 37 Vand. L. Rev. 711, 767 (VII) (1984). See also Welch v. Welch, 265 Ga. 89, 90 (453 SE2d 445) (1995) ("[v]irtual adoption is not a doctrine to be employed broadly").

To establish a virtual adoption, Georgia has long required at least some showing of an agreement between the natural and adoptive parents, a severance of the actual relationship of parent and child as between the child and the natural parents, the establishment of such a relationship between the child and the adoptive parents, and the intestacy of the adoptive parent. Morgan, 285 Ga. at 513 (3), (4); Lee v. Gurley, 260 Ga. 23, 24 (1) (389 SE2d 333) (1990); Williams v. Murray, 239 Ga. 276, 276 (236 SE2d 624) (1977). "These elements, particularly the requirement of intestacy, limit the circumstances under which the doctrine may be applied." Lankford v. Wright, 489 SE2d 604, 607 (N.C. 1997). Although the Georgia courts have interpreted the equitable principle of virtual adoption "on numerous occasions, they have never extended it beyond the intestacy situation found in Crawford." Ellison v. Thompson, 240 Ga. 594, 596 (242 SE2d 95) (1978). See also Prince v. Black, 256 Ga. 79, 80 (344 SE2d 411) (1986) (virtual adoption applies "[i]n situations in which [adoptive] parents die intestate after they have made an agreement to adopt the child and the other elements are established"). As a result, this Court has previously decided that, where a will gives all of the real and personal property of the alleged adoptive parents to someone other than the alleged virtual adoptee, except for a certain

4

specific bequest of personal property, there no longer remains in the estate any property subject to enforcement of the virtual adoption claim. Banes v. Derricotte, 215 Ga. 892, 896 (2) (114 SE2d 12) (1960) (emphasizing that the virtual adoptee is only entitled to property "'*undisposed of by will*'" (citations omitted; emphasis in original)). See also Ezell v. Mobley, 160 Ga. 872, 872 (2) (129 SE 532) (1925) (virtual adoptee is entitled to "the property of the obligor *if* the latter dies without disposing of his property by will" (citations omitted; emphasis supplied)).

This intestacy requirement is completely consistent with the law of equitable or virtual adoption in other states. "Almost exclusively, the application of the doctrine has been limited to intestate estates. It generally has not been applied to testate estates . . . but only to intestate estates where the decedent's intent is unknown." Estate of Seader, 76 P3d 1236, 1241 (Wyo. 2003) (citations omitted). See also Ellison, 240 Ga. at 596 ("Other jurisdictions which recognize this principle also limit its application to the Crawford situation.") (citation omitted); Lankford, 489 SE2d at 607 ("[T]he doctrine acts only to recognize the inheritance rights of a child whose [adoptive] parents died intestate . . . . The doctrine is invoked for the sole benefit of the [adoptive] child in determining

heirship upon the intestate death of the person or persons contracting to adopt."). Otherwise, "the result may negate both legislative and testamentary intent." Seader, 76 P3d at 1245-1246 (footnote omitted). "The effect of a promise to adopt and the application of the principle of equitable adoption are relevant only when there is no contract to make a will and the adopted child claims under a statute of distribution." 7 Williston on Contracts § 16:21 (4th ed.) (citations omitted).

In light of this longstanding and consistent authority in Georgia and other jurisdictions, only a clear legislative direction could abrogate the rule that virtual adoption requires intestacy.

The General Assembly properly can, of course, enact legislation that departs from the common law, but to the extent that statutory text can be as reasonably understood to conform to the common law as to depart from it, the courts usually presume that the legislature meant to adhere to the common law.

May v. State, 295 Ga. 388, 397 (761 SE2d 38) (2014) (citation omitted). The probate court acknowledged the settled understanding that virtual adoption requires intestacy, but that made sense, the probate court said, only for so long as the law provided that the adoption of a child subsequent to the making of a will without contemplation of the adoption revoked the antecedent will altogether, leaving the maker of the will intestate. Prior to 2002, the law did provide that a subsequent adoption would revoke a will, see Thornton v. Anderson, 207 Ga. 714, 718 (64 SE2d 186) (1951), and during that time, the probate court said, questions of virtual adoption "frequently arose in the form of a caveat to a [w]ill," in cases in which a finding of virtual adoption would "result in intestacy." In 2002, however, OCGA § 53-4-48 was amended, and as a result of that amendment, the law no longer provides for the revocation of an antecedent will upon the subsequent adoption of a child, and it now provides only that a later-adopted child is entitled to an intestate share of the estate. See OCGA § 53-4-48 (c). The 2002 amendment, the probate court concluded, did away with the intestacy element of virtual adoption. We disagree.

Contrary to the analysis of the probate court, the doctrine of virtual adoption did not "frequently ar[i]se in the form of a caveat to a [w]ill" that could

7

"result in intestacy." Virtual adoption cannot itself form the basis for a caveat or a finding of intestacy. Certainly, a person may allege and prove her virtual adoption in connection with a caveat, but only to show that she is an heir-at-law and has an interest in the estate so as to establish her standing to contest the probate of a will on a proper ground like mental incompetence or undue influence. See Ezell, 160 Ga. at 872-873 (3)-(5). That proposition, however, is perfectly consistent with the rule that virtual adoption can arise only when the virtual parent dies intestate. If the caveat to the will is successful, then the requirement of intestacy has been met.

Nothing suggests that the 2002 amendment of OCGA § 53-4-48 was intended to alter the law of virtual adoption in any way. The old law providing that a subsequent adoption would revoke an antecedent will was never applied to a virtual adoption, and there is no reason to think that OCGA § 53-4-48, even as amended in 2002, is meant to apply to any "adoption" other than a statutory adoption. To the contrary, the very use of the term "adoption" in the statute suggests that it does not concern any "virtual adoption." Despite its name, virtual adoption "bears almost no relationship to a statutory legal adoption," as it "does not result in a legal adoption or the creation of a legal parent-child

relationship." Sanders, 296 Ga. at 699 (2), n. 3 (citations and punctuation omitted). Because "[v]irtual adoption is not adoption," id., it does not come within the ordinary meaning of the term "adoption." See Deal v. Coleman, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("we must afford the statutory text its 'plain and ordinary meaning'") (citation omitted). Moreover, OCGA § 53-4-48 applies only if the adoption (like the marriage of the testator or the birth of her child) is in a certain temporal relationship to the making of the will. But virtual adoption is not something that is complete before or after a particular date during the life of the adoptive parent. See Sanders, 296 Ga. at 699 (2) ("Virtual adoption is a posthumous legal fiction, a name given to a status arising from and created by a contract where one takes and agrees to legally adopt the child of another, but fails to do so.") (citation and punctuation omitted); Morgan, 285 Ga. at 513 (3) (virtual adoptee "could not legally be considered virtually adopted prior to [the adoptive parent's] death and intestacy"). Finally, even since the 2002 amendment, this Court has continued to recognize that the intestacy of the adoptive parent is one of the elements required to prove virtual adoption. Morgan, 285 Ga. at 513 (3). Because OCGA § 53-4-48 can be at least as reasonably understood to leave the common law of virtual adoption

9

unchanged as to depart from it, we must presume that the General Assembly meant to adhere to the requirement of intestacy.

> For these reasons,

> [w]e decline to apply the doctrine of equitable adoption to affect the distribution of a testate estate. Equity should not be available to countermand clear legislative mandates. Adoption and probate are both statutory procedures, with formalities designed to ensure certainty. Where neither the applicable statutes nor the last will and testament are ambiguous, neither legislative intent nor testamentary intent depend upon resort to equity.

Seader, 76 P3d at 1248. The judgment of the probate court is affirmed to the extent that it admitted the will of Ms. Johnson to probate, but the judgment that Rogers is entitled to an intestate share of the estate is reversed.[3]

> Judgment affirmed in part and reversed in part. All the Justices concur.

Decided June 29, 2015.

Equity. Dougherty Probate Court. Before Judge Stephenson.

---

[3] Because there was no virtual adoption here, we do not decide whether the probate court, if there had been a virtual adoption, would have had the authority to provide an equitable remedy. See Ezell, 160 Ga. at 873 (4) ("a person claiming by virtual adoption can only enforce his claim through a court of equity") (citation omitted).

10

Moore, Clarke, DuVall & Rodgers, James H. Edge, Marshall L. Portivent, Jr., for appellant.

Jessica Rogers, pro se.